**UNITED STATES of America, Appellee,**

v.

**James Ernest MANNING, Appellant.**

**No. 275, Docket 34415.**

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1970.

Decided March 26, 1971.

Rehearing in Banc July 15, 1971.

Certiorari Denied Dec. 14, 1971. See 92 S.Ct. 541.

Walpin, and Harvey J. Yaverbaum, New York City, of counsel), for appellant.

Before LUMBARD, Chief Judge, MOORE and SMITH, Circuit Judges.

LUMBARD, Chief Judge:

James Ernest Manning was convicted in the Southern District of New York before Judge Cannella and a jury for concealment of heroin and cocaine, 21 U.S.C. §§ 173, 174 and was sentenced to twelve years imprisonment. Eight months before trial, Manning moved to suppress the narcotics seized by federal agents. Following a hearing, Judge Wyatt denied the motion in open court.

Manning presses three main arguments here: (1) there was no probable cause for the agents' forced entry into the apartment, and, alternatively, the informant's identity should have been disclosed; (2) failure of the arresting officers to comply with 18 U.S.C. § 3109, which permits forcible entry only after notice of the officers' authority and purpose; (3) erroneous application of the presumption of illegal importation and knowledge to the charge of possession of cocaine. As we agree that there was no probable cause for the forced entry into Manning's apartment, the items seized by the federal agents were improperly admitted into evidence, and the conviction must be reversed.

The facts known to the federal agents leading up to the search appear from the testimony of Agent Devine upon the hearing of the motion to suppress. Approximately two weeks before the search, a previously unknown informant told Agent Devine that Manning was engaged in the distribution of heroin and cocaine, and that Manning had a prior federal narcotics conviction. The informant supplied Manning's address, the make and license number of his car, and the address of Manning's girl friend, Audrey (later identified by the government as Audrey Abbott). He claimed that Manning used Audrey's apartment as his base of operations.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y. (John W. Nields, Jr., Peter F. Rient and Jack Kaplan, Asst. U. S. Attys., of counsel), for appellee.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City (Gerald

Agent Devine, who had already heard of Manning as a major violator, confirmed Manning's ownership of the car observed the car at both his and Audrey's addresses, and confirmed that Manning had three prior narcotics convictions. The informant also identified Manning's picture.

On October 8, 1968, Devine received a call from the informant, who stated that Manning was on his way to Audrey's apartment with narcotics. Devine instructed the informant to go to Audrey's apartment, and to telephone again if Manning returned with drugs. Without attempting to secure a warrant, Devine then proceeded to that address and observed Manning's car parked outside. Devine then was informed by his office that the informant had called to confirm seeing the drugs in Audrey's apartment. Together with other agents, Devine then went to the apartment door, announced that he was a federal agent, and, after hearing running inside, kicked the door down. Manning, Audrey Abbott, and one other person eluded apprehension via the fire escape, one woman was arrested while trying to escape, and two other persons picked the wrong window and thus plunged to their death. Inside the apartment, the agents seized heroin and cocaine, together with the usual paraphernalia, lying together on the bed. These items were admitted into evidence. Manning surrendered at his attorney's office one week after the search.

Manning contends that there was no probable cause for the attempted arrest on October 8, 1968. We agree. The investigation by the agents to corroborate what the previously unknown informant had told them disclosed nothing to support even a suspicion that Manning was dealing in narcotics at Audrey's apartment. Manning's ownership of a car and his visiting at Audrey's apartment were by themselves wholly innocent acts. The advice which Devine received just before going to the apartment, that the informant had called Devine's office to say that he had seen drugs in the apart-

ment, was not confirmed in any particular before the agents broke down the door. Although the informer had been instructed to go to the apartment and to telephone again, the agents did not have any independent knowledge that he had in fact been there. Thus the agents proceeded to the apartment solely on the basis of what they had been told by an undisclosed informant whose reliability had not been tested or confirmed as to any suspicious fact. The agents then knocked on the door and announced their identity. They heard running and scuffling inside, and, when their continued knocking went unanswered, they broke in. In view of the complete absence of any knowledge by the agents of any suspicious act to indicate that the persons in the apartment might be engaged in violations of the narcotics laws, we do not see how the failure of the persons inside immediately to respond to the agents' knocking and their announcement of identity could constitute sufficient probable cause. It is equally likely that the persons inside may not have believed that those knocking were in fact federal agents as there had been no confrontation and the agents had failed to announce their purpose. Wong Sun v. United States, 371 U.S. 471, 482–484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). It seems to us that, absent confrontation or some indication that those inside knew that the persons seeking entry were in fact federal agents engaged in the lawful performance of their duties, it would be a dangerous precedent to say that this circumstance—at best merely suspicious —was enough to transform such skimpy corroboration into the probable cause which the law requires to justify a warrantless invasion of living quarters.

Nor can the fact that the agents knew that Manning had previously been convicted of violations of the narcotics laws be accorded any weight in view of the total reliance on an unknown informant. Were we to hold otherwise it would result in rendering previous of-

fenders subject to warrantless searches upon the unsworn and unexamined allegation of the agents that some unknown informant had advised them that the person investigated was in the business again. Probable cause requires that the agents themselves know enough from their own surveillance and corroboration of suspicious facts to show that there is a real likelihood of factual basis for the informer's information, where the agents' observations alone are insufficient to constitute probable cause.

In the cases cited by the government the information was supplied by a previously reliable informant or from personal observation by the agents which corroborated incriminating details supplied by the informant, and in many cases both sources supplied the probable cause: McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1957); McCreary v. Sigler, 406 F.2d 1264 (8th Cir.) cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed. 2d 773 (1969). Compare also United States v. Gazard Colon, 419 F.2d 120 (2d Cir. 1969); United States v. Malo, 417 F.2d 1242 (2d Cir. 1969), cert. denied, 397 U.S. 995, 90 S.Ct. 1135, 25 L.Ed.2d 403 (1970); United States v. Cappabianca, 398 F.2d 356 (2d Cir.), cert. denied, 393 U.S. 935, 89 S.Ct. 294, 21 L.Ed.2d 271 (1968). In United States v. Chin Dan Fook, 413 F.2d 1016 (2d Cir. 1969), cert. denied, 397 U.S. 928, 90 S.Ct. 936, 25 L.Ed.2d 107 (1970), the incriminating details of the unknown informant's story were overwhelmingly corroborated.

In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), the Supreme Court held the information insufficient for a warrant to issue even though the informant was alleged to have been reliable, the agents had themselves observed a course of conduct on four different days which altogether was far more suspicious than what the agents observed about Manning, and the affiant claimed that Spinelli was a known violator.

Nor do United States v. Soyka, 394 F.2d 443, 452 (2d Cir.), cert. denied, 393 U.S. 1095, 89 S.Ct. 883, 21 L.Ed.2d 785 (1969), United States v. Mont, 306 F.2d 412 (2d Cir.), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962), or United States v. Williams, 219 F.Supp. 666 (S.D.N.Y.1963), aff'd per curiam, 336 F.2d 183 (2d Cir.), cert. denied, 379 U.S. 857, 85 S.Ct. 112, 13 L.Ed.2d 60 (1964), give any support to the government's claim that the failure of persons inside the apartment to answer the door established probable cause. In each of these cases, there was a direct confrontation between the agents and the defendant, and the defendant attempted either to flee or to destroy evidence. Moreover, the informant in *Soyka* had previously given accurate information on twelve or fifteen occasions, and two convictions had been obtained as a result of his tips. In *Williams*, the "informant" had just been arrested and had named defendant as her supplier, and her description of defendant's *modus operandi* was verified by the agents prior to the confrontation.

We therefore find that there was no probable cause for the forced entry and search on October 8, 1968, of the premises occupied by Manning's girl friend, and the evidence seized must be suppressed.[1] The district court is di-

---

1. This is not an appropriate case to remand to the district court so that the government might have an opportunity to produce the informer. See United States v. Comissiong, 429 F.2d 834 (2d Cir. 1970); United States v. Tucker, 380 F.2d 206 (2d Cir. 1967). As we noted in United States v. Robinson, 325 F.2d 391, 393 (2d Cir. 1963), disclosure of the informant's identity in doubtful cases of probable cause resting essentially on the informant's statements is necessary because it can be the only means by which the defense can test the fact that such information was actually received as the agent claims, the means of the informant's knowledge, and the reasons why the agent considered it to be reliable. Additionally,

rected to vacate the judgment of conviction so that there may be a new trial, if the government has available evidence such as that given by Audrey Abbott at the trial.

Reversed and remanded.

MOORE, Circuit Judge (dissenting):

In my opinion, this decision results in a shocking miscarriage of justice. Overwhelming proof of reasonable cause requiring immediate action was in the possession of government narcotics agents charged with the duty of protecting the public against the apparently increasing distribution of narcotics in New York City. At a time when serious crimes are attributable to narcotics use and the rate of annual deaths therefrom, particularly among children, is on the rise, it is incredible to me that any court should rely upon procedural niceties and technicalities so popular in the eighteenth century. But even these technicalities do not exist in this case.

The majority opinion is riddled with the term "previously unknown informant" or "unknown informant" as if this were a term of sufficient opprobrium to cast doubt upon the reliability of the information furnished. However, reliability must be tested against the facts. If the Narcotics Bureau were forbidden to use an informer who had not had a record of previous successful convictions, then the informer system, so essential to ferreting out narcotics distribution, could not exist. There always must be a first instance. In this case, the Agents had ample proof of reliability. These are the facts.

The so-called "previously unknown informant" actually came in person to the office of Agent Devine. This visit changed his "previously unknown" status to known and identifiable. The informant's knowledge of Manning, Manning's narcotics activities and his three prior narcotics convictions were revealed. The Agent checked out this information. It was accurate. The informant further showed his knowledge of Manning by giving the Agent (1) Manning's address; (2) the license plate number of his car—a Cadillac; and (3) the address of a second apartment (247 West 145th Street, Manhattan) where Manning conducted his narcotics business. Not content with the informant's word, the Agents verified each item—all correct. In addition, they personally observed the car parked at both addresses. Further conversations between the informant and Agent Devine ensued and on the morning of the seizure the informant advised Agent Devine that Manning was on his way to 247 West 145th Street with a quantity of narcotics. At this point the informant was told to go to the apartment, observe the drugs if possible and to telephone the narcotics office. Agent Devine then proceeded to the West 145th Street address where he observed Manning's car parked and received word over his car radio that the informant had telephoned the information that he had actually seen the drugs. A critical situation was thus developing rapidly. There was undoubtedly narcotics traffic at 247 West 145th Street. In this situation the majority naively suggest that Agent Devine should have obtained a search warrant. Had he abandoned his pursuit at this point, had he driven downtown in search of a federal officer authorized to issue such a warrant, and had he then returned to West 145th Street, hours would have elapsed, the narcotics would have been cut and distributed, and the traffickers most probably would have disappeared. Had Agent Devine so acted under the circum-

disclosure may be necessary in warrantless arrest cases so that the judge can verify the existence of probable cause. See also United States v. Tucker, *supra*, 380 F.2d at 212.

In Manning's case, the agents' testimony as to the events preceding the search is in-sufficient to establish probable cause, and therefore the informer's testimony would be immaterial. Also, we were advised at oral argument that the informant died shortly after the search.

stances, he would have been derelict in his duty and subject to serious criticism in failing to perform the task on which he was engaged—and properly so.

Agent Devine together with other Agents then proceeded to the designated apartment. This action the majority characterize as "wholly on the basis of what they had been told by an undisclosed informant whose reliability had not been tested or confirmed as to any suspicious fact." The inaccuracy of this statement is convincingly established by the record.

However, despite this well-established background, the real justification of the seizure now commenced. The Agents concededly knocked on the door and announced their identity. They heard running and scuffling inside. After further knocking and no response, they broke in. How the majority can say that there was "complete absence of any knowledge that the persons in the apartment might be engaged in violations of the narcotics laws" defies comprehension. They say that failure of the persons inside "immediately to respond to the agents' knocking" was not probable cause. This bit of naiveté is followed by factual inaccuracy on the assumption that "the persons inside may not have believed that those knocking were in fact federal agents." Contrast this with the actual facts. On the trial, Abbott, Manning's girl friend, testified that Manning said "It's the police at the door; where is the key?" The occupants used the time (a half to one minute) to advantage by unlocking the window gates and escaping (all except one girl who didn't quite make it) down the fire escape. Despite this uncontradicted testimony that there was definite "indication that those inside knew that the persons seeking entry were in fact federal agents," the majority call these facts "skimpy corroboration" not constituting probable cause.

It was this very unrealistic approach to probable cause that caused this Court to consider *en banc* the original panel's decision in United States v. Soyka, 394

F.2d 443 (2d Cir. 1968), cert. denied, 393 U.S. 1095, 89 S.Ct. 883 (1969), and to reverse the panel's decision. See also United States v. Mont, 306 F.2d 412 (2d Cir. 1962), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962).

By this decision, in my opinion, we are taking a long step backwards in a reasonable approach to the definition of probable cause and thereby properly invite public censure of the courts for taking such a hypertechnical point of view. Courts' opinions, of course, should be written without fear or favor but when two skilled trial judges and a jury of twelve have passed upon the facts, it should not be the function of an appellate court, as a non-participant in the events on West 145th Street on October 8, 1968, to overrule the factual determinations of those charged with this responsibility.

I would affirm the judgment.

On Rehearing en Banc.

Before FRIENDLY, Chief Judge, and LUMBARD, MOORE, SMITH, KAUFMAN, HAYS, FEINBERG and OAKES, Circuit Judges.

FRIENDLY, Chief Judge:

On April 26, 1971, the Government petitioned for rehearing and, failing that, suggested consideration *in banc* of the decision of the panel, slip opinion 2197, which had reversed Manning's conviction on the ground that there was no probable cause for an entry for the purpose of arrest and the consequent seizure of 113.32 grams of heroin, 67.60 grams of cocaine, and cutting and packaging paraphernalia which were found in plain view. A central element in the showing of probable cause was the report of an informer, previously unknown to the police and of untested reliability. The Government represented that what it regarded as the panel's refusal to give any weight to the informer's report because he was previously unknown posed a serious threat to law enforcement and contended that the decision ran counter to

United States v. Soyka, 394 F.2d 443, 452 (2 Cir. 1968) (*in banc*), cert. denied, 393 U.S. 1095, 89 S.Ct. 883, 21 L.Ed.2d 785 (1969), and also to United States v. Gardner, 436 F.2d 381 (2 Cir. 1971). The panel having denied rehearing, Judge Moore dissenting as he had from the initial decision, a majority of the active judges voted for *in banc* consideration [1] to be had on the briefs already filed and such additional briefs as the parties might wish to submit. The Government rested on its petition for rehearing; Manning's able counsel filed a supplemental brief.[2] We disagree with the panel and affirm the decision of the district court.

## I.

A record of previous reliability of an informer with respect to the type of crime at issue is indeed crucial where probable cause is bottomed solely on the informer's unverified report. If the Government had proceeded to act on the information given on the informant's first visit, it surely would not have had probable cause or even reasonable grounds to suspect an on-going narcotics violation. See Williams v. Adams, 436 F.2d 30, 35 (2 Cir. 1970) (dissenting opinion), reversed by the court *in banc*, 441 F.2d 394 (2 Cir. 1971). However, when Agent Devine confirmed the informant's report of Manning's prior narcotics conviction, of his address and that of Audrey Abbott's apartment which the informer said was the base of the narcotics operation, when the informant identified Manning's picture, and when the agent observed the car identified by the informer and independently confirmed to be Manning's outside his girl friend's apartment where, according to the informer's subsequent call, a nar-

cotics transaction was about to take place, the level was substantially raised. It was raised still more when Devine learned over the car radio that the informant had called back to report that he had been to the girl friend's apartment where he had spoken to Manning and seen the heroin and cocaine which was about to be cut and sold to two out of town customers who were also present. If the panel majority's statement that "[t]he investigation by the agents to corroborate what the previously unknown informant had told them disclosed nothing to support even a suspicion that Manning was dealing in narcotics at Audrey's apartment," at 994 of 448 F.2d, was meant to refer to the situation at that time, we think it defies reality. By this stage a great deal had occurred to confirm the informant's reliability, and it is strongly arguable that, under the Supreme Court's recent decision in United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 probable cause may have existed, although the precise issue there was the sufficiency of an affidavit for a search warrant. However that may be, anything then lacking in the scales was supplied by the agents' hearing running, scuffling, and hurried conversations inside the apartment after Devine had knocked on the door and twice identified himself as a Federal agent. So far as concerns the issue of probable cause, this sufficiently distinguishes the case from Wong Sun v. United States, 371 U.S. 471, 482–483, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), on which the appellant and the panel majority relied. While running and scuffling after such an announcement may be entirely innocent, narcotics agents are entitled to use their knowledge that efforts to dispose of narcotics and to escape are

---

1. At the time of the vote the judges in active service were Chief Judge Lumbard, and Judges Friendly, Smith, Kaufman, Hays and Feinberg.

2. Before the case could be decided, Judges Mansfield and Oakes became members of the court. Although the statute, 28 U.S.

C. § 46, is not altogether clear, we believed they were entitled to participate in the decision. However, for other reasons, Judge Mansfield elected not to participate in the consideration or decision of the appeal.

characteristic behavior of persons engaged in the narcotics traffic, and particularly of those known to have had previous experience with the criminal law. Chief Justice Warren said in Peters v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968), "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." As Judge Moore observed in his dissent from the panel opinion, 996 of 448 F.2d, Agent Devine was confronted with a situation where failure to arrest would very likely have resulted in the destruction of evidence and the escape of persons whom he had good reason to believe were engaged in perpetrating a crime within a few feet of where he stood. If Devine had not acted, there was every likelihood that Manning and his confederates would introduce a considerable amount of hard narcotics into commerce; moreover, on the theory of the panel majority Devine would not have been entitled to an arrest or search warrant if he had sought one.

With the greatest respect to our brothers who joined in the panel's majority opinion, we think they erred by treating each fact in isolation. We should bear in mind our own admonition concerning the futility of efforts of counsel "to show that each piece of testimony is susceptible of an innocent interpretation if it stood alone. The trier is entitled, in fact bound, to consider the evidence as a whole; and, in law as in life, the effect of this generally is much greater than the sum of the parts." United States v. Bottone, 365 F.2d 389, 392 (2 Cir.), cert. denied, 385 U.S. 974, 87 S.Ct. 514, 17

L.Ed.2d 437 (1966). Although that was said with respect to the sufficiency of evidence of guilt, the principle applies with special force to an officer's on-the-spot determination of probable cause. In United States v. Soyka, 394 F.2d 443, 452, 454 (1968), the *in banc* court gave effect to this principle when it said:

> All that the informant had said was reinforced by what Soyka did, and what Soyka did was colored by what the informant had said.

■ As earlier indicated, we believe also that the opinion attached too much weight to the lack of a previous record of accurate information by the informer.[3] This belief derives strong additional support from United States v. Harris, *supra,* which the panel did not have available to it. Such a record is indeed vital when the informer makes only a "meager report" that "could easily have been obtained from an offhand remark heard at a neighborhood bar," Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969), rather than one "which in common experience may be recognized as having been obtained in a reliable way." *Id.* at 417–418, 89 S.Ct. at 590. Here the informer gave specific information on his first visit, and every bit of this was verified save for his statement that Manning was actually engaged in the distribution of heroin and cocaine. Then on October 8, he predicted Manning's movements, as the named and reliable, but also deceased, informer had done in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Like the unidentified "prudent person" in *Harris,* he recounted "personal and recent observations of criminal activity, factors showing that the information had been gained in a reliable manner," particularly by telephoning that he had actually seen the drugs being about to be

---

3. A principle requiring suppression of evidence in any case where probable cause depended in part on information given by an informer whose reliability had not previously been established by a record of convictions would mean that he could never qualify except when his information was supplemented by evidence sufficient to establish probable cause without it.

cut and sold in Audrey's apartment immediately prior to the arrest. And like the affiant in *Harris,* Agent Devine here had secured independent evidence of Manning's prior dealings in the illegal activity specified by his informant. These added circumstances are quite as impressive in establishing the informer's credibility as an agent's perfunctory and usually untested recital that on one or two previous occasions the informer had furnished facts leading to a conviction. See United States v. Gardner, 436 F.2d 381 (2 Cir. 1971). Finally, here, prior to their intrusion the agents heard sounds characteristic of those made in attempting to conceal drugs.[4]

## II.

■ Appellant urges that even if there were probable cause, Devine did not make a sufficient announcement to justify kicking the door open.[5] The point was not raised in the motion to suppress and accordingly was not dealt with by Judge Wyatt who ruled upon it. We could thus simply refuse to consider the issue altogether. United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). In any event we are confined to "plain error" and

the exercise of our power is discretionary. *Id.* at 280 and cases there cited.

In his direct testimony at the suppression hearing Devine said only that in knocking he identified himself as a Federal agent. When first asked on cross-examination what he stated when he knocked, he replied, "I identified myself as a Federal agent." Defendant's attorney then asked, "And when you knocked again did you again announce your purpose and authority?" Devine replied, "Yes, I did." In direct testimony in the reconvened suppression hearing Devine adverted only to having identified himself as a Federal agent. And on cross on this occasion, he denied having stated why he was there at the time that he knocked. While this somewhat confusing record may well have been due to defense counsel's failure to raise the point, we shall assume *arguendo* in Manning's favor that no express statement of purpose was made.

If we were writing on a clean slate, it would seem that when an officer knocks on the door of an apartment occupied by an experienced narcotics violator, which is reasonably believed by him to be so, and clearly identifies himself as a Federal agent, there is sufficient compliance with the spirit of the statute even

4. Manning asks that if we reject the panel's ruling with respect to probable cause, we should either consider, or ask the panel to consider, his claim that the informer's identity should have been disclosed. Disclosure would not have served its main function, namely, permitting cross-examination of the informer, since he had died shortly after the search. The conduct of the narcotics officers wholly negates any suspicion that the alleged informer was a figment of their imagination, cf. Williams v. Adams, *supra,* 436 F.2d at 38–39. It is thus hard to see what purpose disclosure would have served. Even if the informer had been available, it is not clear that disclosure would have been required under United States v. Tucker, 380 F.2d 206 (2 Cir. 1967), and the later cases in this circuit cited in United States v. Comissiong, 429 F.2d 834, 839 (2 Cir. 1970).

5. 18 U.S.C. § 3109 provides:
   The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
   Although the statute speaks in terms of the execution of a search warrant the Government conceded in Miller v. United States, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), that the same standard applied to an arrest made on probable cause rather than on a warrant. Section 509(b) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, adopted after search in the instant case, has modified 18 U.S.C. § 3109 so far as concerns the execution of search warrants in drug cases.

if perhaps not with the strict letter. A knock is at least a request for entry, and a trafficker in narcotics who has been told that this is being made by a Federal agent can have no real doubt that the purpose is arrest, search, or both, or that, if the request is not honored, something more will speedily follow. In the Case of Richard Curtis, Fost. 135, 168 Eng.Rep. 67 (1756), cited with approval in Mr. Justice Brennan's dissent for four Justices in Ker v. California, 374 U.S. 23, 48, 83 S.Ct. 1623, 1637, 10 L.Ed.2d 726 (1963), a majority of the judges were of the view "that no precise form of words is required in a case of this kind. It is sufficient that the party hath notice, that the officer cometh not as a mere trespasser, but claiming to act under a proper authority." While the burden of an express announcement is slight, if the officer thinks about it, as Devine very likely did not, the importance of it, at least in a case like this, is equally small. However, it can be argued with some force that a contrary view was taken by the Supreme Court, speaking through Mr. Justice Brennan, in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), unless that case rests, as it may, on the basis that the officer's statement was in such a low voice that it may not have been understood. See 357 U.S. at 303, 78 S.Ct. at 1193.[6]

We think, however, that the seeming rigidity of *Miller* has been tempered by the combined effect of a portion of Justice Brennan's dissent in Ker v.

California, *supra,* and the incorporation of it by reference in Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).[7] The issue in *Ker* here relevant concerned an entry into an apartment effected by a pass-key obtained from the building manager. Although California had a statute, Penal Code, § 844, similar to 18 U.S.C. § 3109, the question before the Supreme Court necessarily turned on the Fourth Amendment itself. A majority found there was no violation in the entry; Mr. Justice Brennan, writing for four Justices, thought there was. However, he stated his position in a considerably less strict fashion than in *Miller,* saying, 374 U.S. 47, 83 S.Ct. 1636:

> Even if probable cause exists for the arrest of a person within, the Fourth Amendment is violated by an unannounced police intrusion into a private home with or without an arrest warrant, except
>
> (1) where the persons within already know of the officers' authority and purpose, or
>
> (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or
>
> (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

6. The officer merely knocked. When Miller asked, "Who's there?" the officer "replied in a low voice, 'Police.'" Miller opened the door on a chain and asked what the officers were doing. Before either responded, he sought to close the door but the officers ripped the chain off and entered.

   Although the case was governed by local District of Columbia law, the Court treated it, with the Government's apparent consent, as if 18 U.S.C. § 3109 furnished the applicable standard.

7. Although Justice Brennan also discussed Miller in Wong Sun v. United States, *supra,* 371 U.S. at 482–483, 83 S.Ct. 407, this was in relation to what significance could properly be given Toy's flight as bearing on probable cause. In that case the agent had not identified himself at the crucial time. As said in the opinion, "he affirmatively misrepresented his mission at the outset, by stating that he had come for laundry and dry cleaning. And before Toy fled, the officer never adequately dispelled the misimpression engendered by his own ruse."

While it could have been argued at the time that these exceptions related only to the Fourth Amendment as such and not to 18 U.S.C. § 3109, any basis for such a contention is removed by Sabbath v. United States, 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755 (1968),[8] where Mr. Justice Marshall said:

> Exceptions to any possible constitutional rule relating to announcement and entry have been recognized, see Ker v. California, *supra,* 374 U.S. at 47, 83 S.Ct. at 1636 (opinion of Brennan, J.), and there is little reason why those limited exceptions might not also apply to § 3109, since they existed at common law of which the statute is a codification.[9]

■ We see no reason why the instant case should not be considered to fall within the first exception. In addition to the general factors already reviewed, the informer's report indicates that those within the apartment knew he had been there only moments earlier, and if this is so, the idea that he had squealed, whether of his own volition or on being apprehended, must have occurred to them. In any event the case comes within the letter of the third exception, and we perceive no reason for not reading it to mean what it says, particularly in a case like this where more detailed explanation by the agents, however desirable, would not have made the slightest practical difference, since the conduct of the occupants of the apartment, of which Devine was aware in some degree before actual entry, showed that they knew his purpose full well.

■ Even if our reading of the Supreme Court's intentions should be mistaken, the issue is at least sufficiently close that we do not have here a case of "plain errors or defects affecting sub-

stantial rights" F.R.Cr.P. 52(b). The error, if there was one, was far from "plain," and it is clear that the occupants of the apartment would not have behaved one whit differently if the agent had uttered a few more words. Indeed, even if the point had been raised at trial, the case would seem a proper one for refusing suppression under the criteria stated in ALI, A Model Code of Pre-Arraignment Procedure § 8.02(2) (Tent.Draft No. 4, 1971), quoted with apparent approval in an appendix to the Chief Justice's dissent in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, decided June 21, 1971.

### III.

■ Manning's supplemental brief suggests that if we should disagree with the panel's ruling on suppression, we should return the case for it to consider his contention that the joinder of charges concerning heroin and cocaine in a single count indictment under 21 U.S.C. §§ 173–74, was improper in light of the differing rulings in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L. Ed.2d 610 (1970), with respect to the constitutionality of the statutory "presumption" as applied to the two drugs. While we could do this, as we have done in cases where there remained important appellate issues other than that leading to *in banc* consideration, the argument is so patently devoid of merit on the facts here that the *in banc* court should dispose of this also, as we have done in other cases.

The judgment of the district court is affirmed.

OAKES, Circuit Judge (concurring):

I concur in the result. On a very close question, it seems to me that United States v. Harris, 403 U.S. 573, 91 S.Ct.

---

8. In *Sabbath,* the agents had merely knocked, without revealing their identity, and entered the unlocked apartment within a few seconds. It was not even clear that the knock had been heard. The Court reversed the conviction, Mr. Justice Black dissenting without opinion.

9. Mr. Justice Brennan joined in this opinion, as did all other members of the Court save Mr. Justice Black who evidently did not reach the question.

2075, 29 L.Ed.2d 723 (1971), does tip the scales for a finding of probable cause. I do not believe, however, that Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), and its requirement that an officer give notice of his purpose before bursting into a house, has been weakened as the majority apparently believes. The suggestion that *Miller* rests on the basis that the officer there spoke in a low voice, 357 U.S. at 303, 78 S.Ct. at 1193 is, I fear, wishful judicial thinking, for footnote 3 at 304 of *Miller* seems to me to make it plain that the failure to make a formal announcement of the purpose of police presence is the point on which that case turns. Nor is announcement of purpose a mere formality which may be disregarded at police whim. See Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456, 462 (1949), Mr. Justice Brennan's dissent in Ker v. California, 374 U.S. 23, 46–64, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), adds to, and does not detract from, *Miller*. His first exception referred to by the majority here speaks of "the officers' authority *and purpose*," 374 U.S. at 47, 83 S.Ct. 1623 (emphasis supplied). Sabbath v. United States, 391 U.S. 585 (1968) and its footnote 8 at 591, 88 S.Ct. 1755, 20 L.Ed.2d 828, simply reiterate Mr. Justice Brennan's exceptions mentioned in Ker v. California, *supra*.

Appellant Manning, however, did not raise this point below and, on the confused state of this record, adverted to in the majority opinion, I would not consider this "plain error" within Rule 52 (b), Fed.R.Cr.P.; see United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

LUMBARD, Circuit Judge (dissenting):

I dissent and adhere to the views which I expressed in the panel's majority opinion.

I fail to see anything in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), that compels a different result. As the majority recognizes in its *in banc* opinion here, the issue in *Harris* was whether or not a law enforcement officer's affidavit was sufficient to constitute probable cause for a federal magistrate to issue a search warrant, whereas the issue here is whether or not there was probable cause for a warrantless entry into a private dwelling in order to arrest and for the consequent seizure of the narcotics and attendant equipment.

To me, this distinction is significant because in the case of a search warrant, the law enforcement officer has to appear before the magistrate who can question him further and call for more information or clarification if he is not satisfied that the officer's affidavit constitutes sufficient probable cause for issuing the warrant. Indeed, it is the intervention of an impartial judicial officer in deciding when probable cause exists that makes the search warrant an important safeguard against unwarranted intrusions by government agents into private dwellings. See United States v. Robinson, 325 F.2d 391, 394 (2d Cir. 1963). That safeguard, of course, is not present when the law enforcement officers themselves make the determination that they have probable cause for an entry in order to arrest. Hence, in my view, the test of probable cause required for entry without a warrant should be more stringently applied than that for obtaining a search warrant. Otherwise, private dwellings would be subject to warrantless invasions upon the law enforcement officers' suspicion, with the scantiest sort of corroboration, that a crime was being committed inside, and the policy underlying the search warrant requirement could be subverted. As I pointed out in the panel opinion, the circumstances leading to the entry in this case, in my opinion, fell far short of those which would justify a warrantless intrusion.

Furthermore, the indicia of the unknown informant's reliability in *Harris*

were, in any event, stronger than those here. For example, the informant in *Harris* made a statement against his own penal interest when he admitted his illicit liquor purchases; and such a statement, of course, is a good indication of an informant's reliability. In fact, it was solely on this basis that Mr. Justice White joined in the Supreme Court's judgment thus making the necessary five-man majority. There is nothing in the record here to show that the unknown informant made any such statement; and the indications of his reliability were very slight indeed. His information had been confirmed solely as to facts which by themselves were wholly innocent—Manning's ownership of a car and his visiting at Audrey's apartment—and not as to any fact tending to show that Manning was actually engaged in the distribution of narcotics.

At the very least, in such circumstances, we should remand the case for a further hearing on the identity and reliability of the informant, as we did in United States v. Robinson, *supra,* in order to give defense counsel the opportunity to cross-examine the government agents regarding that informant. If at that hearing the government could not introduce additional corroborating evidence so that the arrest might be supported by that other evidence, the government should be required to disclose the informant's identity or run the risk of having the arrest and subsequent search held invalid. Here, of course, it is possible that the purpose of such a further hearing would be frustrated because the informant is dead and thus cannot be produced and cross-examined himself. But for the Court today to uphold a warrantless entry based primarily upon the word of an unknown informant, untested as to any suspicious fact, without requiring any disclosure whatsoever, is, in my opinion, a dangerous undermining of Fourth Amendment rights.

The fact that the majority also relies on the agents' hearing running, scuffling, and hurried conversation inside after they had knocked on the door and announced their identity does not persuade me. As I pointed out in the panel opinion, the response of the people inside to the knocking of persons identifying themselves as federal agents can hardly be said to constitute probable cause for entry into a private dwelling, when the agents had no prior knowledge of any suspicious acts to indicate that the persons inside might be dealing in narcotics, when the agents had failed to announce their purpose, and when there had been no face-to-face confrontation between them.

J. JOSEPH SMITH, Circuit Judge (dissenting):

I dissent. As pointed out in Judge Lumbard's panel opinion, the information given by the totally unknown informant was not corroborated in any non-innocent aspect, sufficiently to justify breaking into a dwelling.