**UNITED STATES of America**

v.

**Pjeter SHKOZA, Defendant.**

No. 75 Cr. 968.

United States District Court,
S. D. New York.

Dec. 23, 1975.

Thomas J. Cahill, U. S. Atty., for the Southern District of New York, New York City, by Jacob Laufer, Sp. Atty., Dept. of Justice, for United States of America.

Abraham J. Hirschsprung, New York City, by Herbert Zelenko, New York City, for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

### I.

Defendant Pjeter Shkoza, is charged with unlawfully transporting into New York a variety of handguns purchased or otherwise obtained outside the state. Defendant was arrested on June 18, 1975, on his arrival at the New York Port Authority Bus Terminal here in New York City. The suitcase he was carrying at the time was seized and searched. It contained seven handguns and approximately 250 rounds of ammunition. Shkoza's formal arrest followed the search of the suitcase which revealed the cache of firearms. There was no warrant authorizing either the arrest or seizure of the suitcase.

■ Defendant moves to suppress the seized contraband on the ground that probable cause was lacking to warrant his arrest or the search and seizure of his belongings. If the search was constitutionally unwarranted, the tainted evidence seized is inadmissible at trial, *Weeks v. United States,* 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914); and the burden of persuasion is on the government to show that the warrantless arrest and search conformed to constitutional strictures. *Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). A suppression hearing was held on November 19–20, 1975, to determine whether the special agents of the Bureau of Alcohol, Tobacco & Firearms, United States Treasury Department (ATF) acted lawfully on June 18, 1975, in stopping Shkoza, seizing his suitcase, opening it to discover firearms, and arresting him thereafter.

On June 18, 1975, Vincent Mazzilli, ATF special agent and the arresting officer, swore out a complaint against Shkoza charging a violation of Title 18, United States Code, Section 922(a)(3). His sworn affidavit detailing the facts leading to Shkoza's arrest and the filing of the complaint state that information on Shkoza's alleged gun-running activities was obtained through the knowledge and personal observation of a confidential informant and frm statements· by Shkoza overheard by the informant. In August, Mazzilli filed a new affidavit modifying his June 18th statement to indicate that knowledge of the confidential informer concerning Shkoza was not based solely on personal knowledge and observation but was also based on information supplied by a third party who had overheard Shkoza make incriminating statements. The second affidavit helped generate defendant's motion to suppress.

## II.

The series of events leading directly to Shkoza's arrest began on June 17, 1975, at approximately 10:30 p. m. when Timothy P. Brian, ATF special agent head-

quartered in Cleveland, received a call from an informant advising him that the defendant would be leaving Cleveland at 10:45 p. m. that night on a Greyhound bus bound for New York. The informant advised Agent Brian that Shkoza was a white male, approximately 60–65 years of age, gray haired and balding, thin or skinny, weighing 140 pounds, and approximately 5′8″ tall; that he would be wearing dark-rimmed glasses, a gray jacket with a black vest and beige trousers, and that he would be carrying a red suitcase containing a quantity of guns.

This informant had previously been a source of reliable information. The first time information had been supplied was in August, 1974. This earlier information had been obtained by ATF from the Cleveland Police Department which had dealt directly with the informant. The informant had next supplied information· to the ATF on June 12, 1975; and between then and June 17, 1975, the informant had supplied information to the ATF from eight to twelve times. The information supplied in the past had been independently checked and verified. In August, 1974, the informant had advised Agent Brian that one Edward Manning was involved with defendant and drove a certain type of car, giving the license plate number. This material was checked and found to be accurate. On a subsequent occasion the informant had advised Brian that Manning had an interest in guns and maintained a collection of guns himself. This information proved to be reliable. Information concerning a Nicholas Koligi and the residence of Shkoza in Brooklyn had also been supplied by the informant and subsequently verified by the agents.

Brian relayed to Joseph Kalister, who was group supervisor in ATF's New York office, the informant's tip that Shkoza was on his way to New York with guns. Brian also passed along the description of the defendant supplied by the informant. Brian advised Kalister that Shkoza had been transporting guns into New York for resale for a number of years and that the information he was

giving Kalister had come from a reliable and confidential informant. Kalister assigned special agent Vincent J. Mazzilli to the case.

Mazzilli checked about the Greyhound bus schedule between Cleveland and New York. He was advised that a bus bound for New York was scheduled to leave Cleveland at 10:45 that night (June 17th) and arrive in New York at 8:05 the next morning (June 18th). Kalister, Alexander D'Arti (another ATF special agent) and Mazzilli met together early the next morning and proceeded to the New York Port Authority Bus Terminal. They learned that the bus in question was # 7542. Kalister and Mazzilli stationed themselves in front of the bus when it stopped in the terminal and the passengers began disembarking.

The agents saw a white male of the approximate age and physical stature described, wearing horn-rimmed glasses, a gray jacket with a black vest and beige trousers and carrying a red suitcase get off the bus. Mazzilli followed him into the waiting room, while Kalister remained behind to see whether anyone else fitting the description was among the passengers. No such other person appeared.

Mazzilli went up to Shkoza in the waiting room, called him by name and asked him where the guns were. Shkoza gestured toward the suitcase and made a movement as if to open it. Mazzilli quickly took the suitcase, unzipped it and found the seven guns and 250 rounds of ammunition. He then placed Shkoza under arrest.

Mazzilli later filed the previously described complaint against Shkoza before Magistrate Martin D. Jacobs. Prior to filing the complaint on June 18, 1975, Mazzilli spoke to Brian by telephone, but that conversation focused solely on the reliability of Brian's informant.

Some time in August during a talk between Mazzilli and Jacob Laufer, government counsel in this case, the accuracy of the June 18th statement was questioned. Mazzilli talked to Brian again and in that discussion learned that a third party was in part responsible for the information the informant had supplied on June 17th. The new affidavit was then filed.

### III.

■ Defendant contends that probable cause [1] for Shkoza's arrest has not been established and that the arrest and seizure were not permissible under constitutional constraints. For a search incident to a warrantless arrest to be valid, the arrest must have been lawful. *Chimel v. California,* 395 U.S. 752, 755–56, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The arresting officer must have had authority to arrest, and the arrest must have been based on probable cause. *Spinelli v. United States,* 393 U.S. 410, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). A suitcase held by a suspect at the time he is arrested comes within the "grabbing-distance" area permitted to be searched under *Chimel. United States v. Riggs,* 474 F.2d 699, 704 (2d Cir.) *cert. denied,* 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973).

■ Title 26, United States Code, Section 7608(a)(3) provides that a government agent may make a warrantless arrest "for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony . . . ." [2]

---

1. "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288 [69 L.Ed. 543 ,1925]." *Draper v. United*

States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).

2. The term "reasonable grounds," as used in the statute, has substantially the same meaning as "probable cause." *United States v. Boston,* 330 F.2d 937, 938 n. 1 (2d Cir.), *cert. denied,* 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1963).

Defendant argues that probable cause was lacking because (1) the reliability of the informant who supplied information to the ATF agents has not been demonstrated, and (2) the°information supplied by the informant could not be sufficiently reliable since all of it did not come from the personal observations of the informant.

■ The reliability of an informant's tip is to be judged by the standards laid down by the Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States, supra.* In these cases the Court "invalidated search warrants for failure of the affidavits [used to secure those warrants] to show (1) that the informer was in fact a reliable person, and (2) that the underlying circumstances by which he obtained his information were such that it was probably accurate." *United States v. Canieso,* 470 F.2d 1224, 1229 (2d Cir. 1972).[3]

The Supreme Court has found probable cause lacking when the affidavit submitted by police officers to a magistrate to obtain a search warrant failed to reveal

" . . . the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, . . . was 'credible' or his information 'reliable.' " *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. at 1514 (footnote omitted).

In *Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589, the Supreme Court again found probable cause lacking where:

"Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion."

The Court continued:

"Perhaps even more important is the fact that *Aguilar's* other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable."

On the other hand, in *Draper v. United States, supra,* a federal agent received a tip from an informant who had worked for the government for six months and had previously supplied accurate information. The informant described to the agent the appearance of the petitioner in the case and said that the petitioner was peddling narcotics, had gone to Chicago to obtain a supply and would return on a certain train on a certain day or the following day. Without more, the agents recognized the petitioner from the informant's description, arrested him, searched him and seized narcotics in his possession. The Court noted that when the agents saw the petitioner every detail in the informant's tip was verified except for the information about narcotics. The Court concluded that since the agents possessed such detailed information from an informant of proven reliability, and since the tip was confirmed by the agents' own observations, the agent "would have been derelict in his duties had he not pursued it." *Draper v. United States, supra,* 358 U.S. at 313, 79 S.Ct. at 333. *See also, United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

In a similar vein, in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62

---

**3.** In the instant case the question before the court is whether probable cause existed for a warrantless arrest. "[T]he analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue." *Spinelli v. United States, supra,* 393 U.S. at 417 n. 5, 89 S.Ct. at 589.

(1967), the Court found the probable cause requirement satisfied when a reliable informant told government agents that the petitioner had narcotics on his person, was selling narcotics, and the location where he could be found. The informant led the officers to the petitioner who did nothing suspicious while they watched except perhaps walking hurriedly between two buildings.

The Second Circuit has based a finding of probable cause on similar circumstances. *United States v. Manning,* 448 F.2d 992 (2d Cir. 1971) (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). Although the informant in that case had no previous record of reliability, the court found probable cause for the arrest based on the detailed specific information given by the informant which came from personal observations of recent criminal activity, and a description of how the informant had gathered the information. In addition, the officers themselves had confirmed that criminal activity was happening when they knocked on the door of the apartment where the defendant was reported to be, identified themselves, and then "heard sounds characteristic of those made in attempting to conceal drugs." *United States v. Manning, supra,* 448 F.2d at 1000 (footnote omitted). *See also, United States v. Canestri,* 518 F.2d 269 (2d Cir. 1975).

 In establishing reliability, the government is not required to identify the informant, *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. 1509, but need only recite previous instances when the informant has proved to be reliable. *See United States v. Canestri, supra,* 518 F.2d at 272. The past reliability of the informant serves as one of several possible guarantors of the reliability of the information given to authorities in any particular case. Information from anonymous or untested sources also can sup-

ply the basis for probable cause. *United States v. Manning, supra,* 448 F.2d at 997; *United States v. Ho Yee Bon,* 378 F.Supp. 582, 584 (S.D.N.Y.1974). The informant's tip may be sufficiently credible if, for example, the government relates the circumstances under which the informant received the information, if the tip includes detailed descriptions of criminal activities of the accused, or if independent investigation by government agents corroborates some of the information. *Spinelli v. United States, supra,* 393 U.S. at 416–417, 89 S.Ct. 584. The purpose of this inquiry is to guarantee that the informant "is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. at 589.

 What, then, are the guarantors of reliability in this case? I note at the outset that in determining this question as well as the larger issue of whether probable cause has been established, the court must consider the collective knowledge of the ATF agents in New York and Cleveland. *United States ex rel. LaBelle v. LaVallee,* 517 F.2d 750, 753 (2d Cir. 1975); *United States v. Canieso,* 470 F.2d 1224 at 1230 n. 7.[4] The evidence shows that the informer had supplied information on approximately ten to fifteen previous occasions, and the information supplied had been verified and found to be accurate. Moreover, the information which led to Shkoza's arrest was detailed—that he would be going from Cleveland to New York that night on a 10:45 Greyhound; that he was a white male; gray haired, thin, balding and 5′8″ in height; would be wearing a gray jacket with a black vest and beige trousers and carrying a red suitcase which would contain guns. Each detail was verified. A Greyhound bus was

---

**4.** Notes taken by ATF special agent Brian during the course of his investigation were submitted to the court for *in camera* consideration. In addition, some of Agent Brian's testimony was taken *in camera*. None of this material, however, has been relied upon to decide this motion. Determination was reached solely on the basis of evidentiary facts available to all parties.

scheduled to leave Cleveland at 10:45 on the night of June 17th and was scheduled to arrive in New York at 8:05 the next morning. One and only one of the passengers on the bus fit the description given. Not only was the informer's description verified when Shkoza alighted from the bus, but when Mazzilli asked him where the guns were and the defendant gestured toward the red suitcase, the reliability of all the information received was confirmed. Probable cause to arrest Shkoza was clearly established at that time, whether the information had come from a reliable source or from an anonymous tip.

The fact that a third party supplied part of the informant's information given to the law enforcement authorities does not change the situation. Although third-party information is inherently suspect, *Aguilar v. Texas, supra,* 378 U.S. at 113, 84 S.Ct. 1509; *United States v. Romero,* 343 F.Supp. 988, 991 (S.D.N.Y. 1972), here it is similar in nature to information secured from an untested or anonymous source, which has been verified and confirmed independently in all of its specific details. *See United States v. Manning, supra,* 448 F.2d at 999–1000.

Nor is it of any importance that the first sworn statement of Mazzilli in this matter was in error. There was no deliberate attempt to mislead the magistrate or to distort the truth. As soon as the possibility of error was brought to his attention, Mazzilli made inquiries and swore out a second affidavit. The latter affidavit standing alone is a sufficient statement of the circumstances to establish probable cause in this case.

### IV.

■ The agents were entitled to search Shkoza's suitcase, even though they did not formally place him under arrest until several moments later. At the time the agents first walked up to Shkoza and spoke to him, he was no longer free to move as he pleased. The interruption and restriction of his freedom of movement completed the arrest. *Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *United States v. Boston, supra,* 330 F.2d at 939.

■ Even if the arrest is considered to have been unfinished until a few moments later when Shkoza was taken into custody, or when he was told he was under arrest and informed of his rights, the search and seizure of the suitcase are still incident to the lawful arrest and hence valid. The fruits of an invalid search cannot justify a subsequent arrest, *Johnson v. United States,* 333 U.S. 10, 16–17, 68 S.Ct. 367, 92 L.Ed. 436 (1947) but if government agents have probable cause to arrest a person, it is not significant if they reverse the sequence of events. *United States v. Jenkins,* 496 F.2d 57, 73 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Riggs, supra,* 474 F.2d at 704; *United States v. Skinner,* 412 F.2d 98, 103–04 (8th Cir.), *cert. denied,* 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969); *United States v. Boston, supra,* 330 F.2d at 939. To hold otherwise, under these circumstances, would exalt form over substance, overburden police with highly technical rules and require courts to decide the exact instant that an arrest took place, *United States v. Jenkins, supra; United States v. Skinner, supra.* Such considerations carry special force in the circumstances of this case where the agent believed he was in physical peril when the defendant gestured as if to open a suitcase the agent understood contained guns.

■ The search of the suitcase and the seizure of the handguns and ammunition can be justified on another basis as well. Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a law enforcement officer who has a legitimate reason to stop a person for questioning may make a limited search of the persons for weapons if he feels he is in physical peril. In *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court explained the holding of *Terry:*

" 'When an officer is justified in believing that the individual whose sus-

picious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. *[Terry v. Ohio,]* 392 U.S., at 24 [88 S.Ct. 1868, at 1881] . . . [1968]. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."

The Court in *Terry* had also said:

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. at 1880 (footnote omitted).

*Adams v. Williams, supra,* 407 U.S. at 147, 92 S.Ct. 1921, reaffirmed *Terry* and in the later case the Court added that the government agent's information can come from sources other than his own senses. An informant's tip, if reliable, can serve as the basis for the policeman's suspicion that a person is armed and dangerous. I conclude, then, that even if the agents in this case lacked probable cause to arrest Shkoza, they had a sufficient basis to suspect that he was armed and that they might be in danger. When the agent approached him, and in response to the question about where the guns were Shkoza reached for the suitcase and started to open it, the agent was justified in the belief that he was in danger and could conduct a limited search of the bag for weapons. Weapons thus seized in self-protection are admissible into evidence under *Terry. United States v. Riggs, supra,* 474 F.2d 704–05.

Accordingly, I find that probable cause was clearly present at the time to warrant defendant's arrest and seizure of his suitcase. Alternatively, the guns and ammunition are admissible under *Terry* as modified by *Adams.* Accordingly, the motion to suppress is denied.

So ordered.