**UNITED STATES of America,**
**Appellee,**

v.

**Raymond BERRYHILL, Appellant,**
**and**
**Carolyn Denise Holley, a/k/a**
**Linda Adams.**

**No. 72-1094.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1972.

Decided Aug. 30, 1972.

Rehearing Denied Oct. 10, 1972.

Certiorari Denied Dec. 4, 1972.
See 93 S.Ct. 547.

Roy W. Meadows, Des Moines, Iowa, for appellant.

John B. Grier, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before LAY and BRIGHT, Circuit Judges, and DEVITT, District Judge.*

BRIGHT, Circuit Judge.

A jury found Raymond Berryhill guilty on two counts of breaking open mailboxes, violations of 18 U.S.C. § 1705, and on three counts of possessing stolen mail, violations of 18 U.S.C. § 1708. Berryhill appeals, contending that the district court erred: 1) in denying a motion to suppress evidence seized incident to Berryhill's allegedly illegal arrest; 2) in admitting testimony showing that Berryhill's codefendant had committed a crime not charged in the indictment; and 3) in failing to strike expert testimony indicating that paint particles found on a prybar in Berryhill's possession matched the paint from two mailboxes introduced into evidence showing damage from forcible entry. We reject these contentions and affirm.

At approximately 1:10 P.M. on October 21, 1971, Carolyn Denise Holley, a young white female,[1] appeared at the drive-in window of the Plaza State Bank, 2524 Post Street, Des Moines, Iowa. Holley presented the teller a check purportedly drawn by the Midland Casualty Insurance Company in the amount of $1,479.50. She asked the teller to deposit the proceeds, less $975 in cash, to the account of John M. Foley, and she supplied the teller with the cor-

---

* Sitting by designation.

1. Miss Holley's age is not stated in the record. We assume, however, that she was under twenty-six years of age since she was sentenced under the Federal Youth Corrections Act. *See* 18 U.S.C. § 4209.

rect number for that account. The teller processed the check and returned $975 to Holley. Shortly after Holley left the bank, the teller noted a discrepancy between the amount stamped on the check by a check protector and the amount in figures typed on the check. The teller asked another bank employee to verify the correct amount with the drawer-insurance company. When this employee was unable to find a listing in the Des Moines telephone directory for either the company or its agent, the teller called the Foley residence. Mrs. Foley told the teller she had not made a deposit that day and that she had not received, and did not expect to receive, a check from the Midland Casualty Insurance Company. Mrs. Foley also said that one of her own checks had recently disappeared from her mailbox.

The teller then telephoned the police, relating information supplied by Mrs. Foley, and noting that Holley was a young woman with long, black hair, and was wearing a plaid or checked outfit. The teller further stated that Holley was driving a late model, gold-colored Cadillac bearing Oklahoma license plates, and that the first four digits on the plates were XX20.

Less than fifteen minutes after the check-cashing incident, Des Moines police broadcast a radio bulletin relating the information supplied by the teller, and directing officers on patrol to stop and hold the driver. Kenneth Moon, a traffic control officer, spotted a car fitting the broadcast description at approximately 1:25 P.M. in the Des Moines loop area. He noted that the vehicle carried two persons, a woman driver similarly fitting the broadcast description, and a black, male passenger. These later were identified, respectively, as Holley and Berryhill.

At the time, Officer Moon was driving a three-wheel motorcycle incapable of rapid pursuit. Its siren furthermore was not in working order. He, nevertheless, followed the Cadillac, signaling the driver to halt by waving his arm and sounding his horn. Although the driver was not speeding, Officer Moon could not overtake the Cadillac. After following the vehicle in a westerly direction for about four blocks, he observed the driver signal for a left turn at 17th Avenue and Grand, and then, suddenly, continue for another block, finally turning left toward what is known as Fleur Drive Bridge. Officer Moon concluded that the occupants of the vehicle had seen his signal, and, ignoring it, had refused to stop. He radioed a patrol car for assistance. As a consequence, Officer Blaylock, operating a marked Des Moines Police patrol car, joined the chase and caught up with Officer Moon and the Cadillac on Fleur Drive Bridge. Officer Moon radioed Officer Blaylock that the Cadillac was not going to stop. Red lights flashing and siren wailing, Officer Blaylock pulled alongside the Cadillac and motioned to the occupants to pull over. The driver did not acknowledge the signal and continued down the street. Finally, Officer Blaylock cut in front of the Cadillac and forced it to stop.

Both Holley and Berryhill were placed under arrest. The officers handcuffed Berryhill as he emerged from the Cadillac and took him to the patrol car where he was given his *Miranda* warning. One of the officers questioned Holley. She stated that the proceeds of the check she had cashed could be found in the right front pocket of Berryhill's shirt. The officers then searched Berryhill and found $975, precisely the amount received by Holley from the teller at the Plaza State Bank. Thereafter, Berryhill was taken to the police station where he underwent further questioning and a further search. This search revealed an additional $13,000 on Berryhill's person, and a letter which had been stolen from a mailbox in Des Moines.

I.

We turn first to Berryhill's contention that the trial court erred in denying his motion to suppress the $975 seized by

the police at the scene and the items discovered in his possession at the police station. Appellant contends that he was placed under arrest before Holley told the police where the money could be found. Appellant argues that, prior to acquiring this information, the police lacked probable cause to arrest him. Therefore, the $975 and the other items seized constituted the fruits of an illegal arrest.

The government responds with two alternative arguments. First, it argues that appellant was not arrested until after Holley informed the police about the location of the money, and that this information provided probable cause for the arrest and a search of Berryhill's person incident to the arrest. Second, the government argues that even if Berryhill was arrested at the moment he emerged from the Cadillac, there was probable cause to support such action. The searches, therefore, did not taint the evidence seized therein, since they occurred while Berryhill was in lawful custody of the police.

■ We reject the government's contention that police had not placed Berryhill under arrest until after Holley's disclosure of the location of the money in question. The record shows clearly that the police, prior to questioning Holley, took Berryhill from the Cadillac, told him he was under arrest, frisked him, handcuffed him, placed him in the police cruiser, and gave him his *Miranda* warning. We think that these actions constituted an arrest under any definition of that term. Since the police arrested Berryhill before Holley disclosed the location of the bank's money upon his person, we cannot consider this disclosure in passing upon the legality of the arrest.

■ We explore such legality by looking to the applicable provisions of state law governing arrest procedures, and applying those provisions consistently with the federal constitutional standard of probable cause. *See* United States v. Bazinet, 462 F.2d 982 (8th

Cir., 1972). Iowa law authorizes a police officer to make a warrantless arrest

[w]here a public offense has in fact been committed, and [the police officer] has reasonable ground for believing that the person to be arrested has committed it. [Ia. Code Ann. § 755.4, subd. 2 (1950)]

We believe that the Iowa standard requiring police officers to have reasonable ground before making a warrantless arrest may be equated with the federal constitutional standard of probable cause necessary to a warrantless arrest. *See* Klingler v. United States, 409 F.2d 299, 303 (8th Cir. 1969); Reed v. United States, 401 F.2d 756, 760 (8th Cir. 1968).

■ In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948), Justice Rutledge set forth the classic definition of probable cause:

"The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." * * * And this "means less than evidence which would justify condemnation" or conviction * * *. Since Marshall's time * * * it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within * * * [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. [338 U.S. at 175–176, 69 S.Ct. at 1310 (brackets original)]

Applying the *Brinegar* test to this case, we believe that the police had probable cause, above the level of mere suspicion, to arrest Berryhill. At the time of the arrest, the police knew 1) that a fraudulent check had been cashed at the Plaza State Bank located outside the downtown area; 2) that within fifteen minutes of this incident appellant and his companion, Holley, had been spotted by Officer Moon in the Des Moines loop area in an automobile fitting the de-

scription of the one used at the bank; 3) that the automobile bore out-of-state license plates; 4) that Holley fit the description of the woman who had cashed the check at the bank; 5) that neither occupant of the automobile had acknowledged repeated police signals to pull over; and 6) that Officer Blaylock had found it necessary to force the automobile to the side of the road.

The brief lapse of time and the distance traveled reasonably suggested that the vehicle and its occupants had proceeded directly from the bank to the loop area. This, combined with the specific identifying information and the circumstances of the police pursuit, provided reasonable ground for the officers to believe that appellant had been present in the automobile, almost from the time of the check-cashing incident, and was implicated in this fraudulent scheme, at least as an accessory after the fact. We recognize the possibility that appellant might have been an innocent bystander, along for the ride. But under the circumstances here, we think that the officers reasonably could have judged this possibility to be remote. We hold that appellant's arrest was based on probable cause and that the search incident to the arrest was reasonable under Fourth Amendment standards.

## II.

We now turn to the evidentiary questions raised by appellant. The trial court permitted the teller from the Plaza State Bank to give testimony relating to the check-cashing incident. Appellant contends that this evidence was introduced solely to prove the commission of a crime not charged in the indictment and therefore should have been excluded. We disagree. One count of the indictment charged appellant and Holley jointly with theft of the Foley check. By depositing the fraudulent check to the Foley account, Holley demonstrated that she, as Berryhill's accomplice, knew the correct number of that account. This evidence was therefore admissible to connect appellant with the theft of the Foley check.[2]

## III.

Appellant's final contention is that the trial court erred in failing to strike expert testimony indicating that paint particles found on a prybar in Berryhill's possession matched particles taken from certain mailboxes introduced as exhibits. Appellant argues that the trial court should have stricken this evidence because the government failed to introduce any samples of paint. From our review of the record, we find that this evidence was merely cumulative to other evidence indicating that the particular prybar obtained from Berryhill inflicted the damage to the mailboxes introduced in evidence. Even assuming, therefore, that the testimony regarding paint particles was erroneously admitted, appellant sustained no prejudice.

Affirmed.

2. In overruling appellant's objection to this testimony, the trial court said:

Gentlemen, in view of the evidence that has been brought out at prior hearings, it's the Court's position that this evidence is part of a chain of circumstantial evidence to connect the theft of the letter addressed to J. C. Penney and Company to these two defendants that [sic] were stopped at Fleur Drive. The evidence at the hearing on the Motion to Suppress brought out that the sum of $975.00 was found in the pocket of the defendant Berryhill. And it's the Court's position at this time that the evidence is not only admissible to prove intent, but also admissible as part of the chain of circumstances surrounding the whole total [sic] of the circumstances. Therefore, the Court's ruling will be that the objections and the motions made at this time are overruled.