UNITED STATES of America,
Appellee,

v.

Gerald Monroe GREEN, Appellant.

UNITED STATES of America,
Appellee,

v.

Dee Leon LOYD, Appellant.

UNITED STATES of America,
Appellee,

v.

Harold Lewis WALLS, Appellant.

Nos. 75–1239, 75–1240, 75–1257.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Nov. 13, 1975.

Bruce Hiller, Minneapolis, Minn., for H. L. Walls.

Maher J. Weinstein, Minneapolis, Minn., for G. M. Green.

Phillip S. Resnick, Minneapolis, Minn., for D. L. Loyd. Concluded by Mr. Resnick.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT,* Senior District Judge.

VAN PELT, Senior District Judge.

Appellants Gerald Green, Dee Loyd and Harold Walls were jointly indicted and convicted under 18 U.S.C. § 2113(a) and 2113(d)[1] for the robbery of the Home Federal Savings and Loan Association of Minneapolis, Minnesota. A single jury trial was held and the appellants are here separately appealing their convictions.

Motions for judgment of acquittal or a new trial were timely filed and denied.

The issues being raised on this appeal are numerous. Simply stated, they are:

1. Whether the authorities had sufficient facts to establish probable cause for the warrantless arrest of the three appellants.

2. Whether the search of appellant Walls' automobile resulted from an involuntary consent and was thereby unlawful.

3. Whether the district court erred in allowing expert testimony concerning identification of appellant Green's clothing, thereby invading the province of the jury.

4. Whether identification testimony was tainted by an unduly suggestive photographic display.

---

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

1. (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

   Whoever enters or attempts to enter any * * * savings and loan association, or any building used in whole or in part as a * * * savings and loan association, with intent to commit in such * * * savings and loan association, or building * * * any felony affecting such * * * savings and loan association and in violation of any statute of the United States, or any larceny—

   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

   * * * * * *

   (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

5. Whether the evidence was sufficient to convict appellant Loyd either of violating 18 U.S.C. § 2113(a) and (d) as a principal or as an aider and abettor under 18 U.S.C. § 2.

6. Whether certain instructions to the jury concerning aiding and abetting were improper.

As the facts in this case bear heavily on the issues raised by the appellants, a complete statement of the pertinent facts and their chronological development will follow.

At approximately 3:00 p. m. on the afternoon of December 9, 1974 Steven Euller, a security guard at Powers Department Store, observed a silver and purplish Ford Galaxie pull up quickly to one of the store's entrances. Two of the four black males riding in the car got out and walked quickly into the store where they purchased three ski masks from Rosalind Martin. The men left with the ski masks and a receipt containing Ms. Martin's identification code # 409M.

Mr. Euller recorded the license number of the automobile, # KD7652, and called it into the Minneapolis Police Department along with a description of the car and the two men who entered the store. The men were described as black males, approximately five foot eight and five foot ten. One had a beard and a moderate Afro. The other had curly or wavy hair.

On the morning of December 10, 1974 at approximately 9:30 a. m., Minneapolis Police Officer Dolan saw a 1963 maroon Ford with a light colored front end at the intersection of Humboldt and Lagoon Avenues. This intersection is one block from the Home Federal Savings and Loan Association. The car contained three black men, one of whom was wearing a ski cap. Dolan did not note the license number of the car.

Later investigation disclosed that at about the same time Gus Zaccaro observed a similar car illegally parked in his parking lot, one block west of Home Federal Savings and Loan. He requested the three black males, all of whom were wearing ski caps, to move the car.

At 9:46 that same morning the police dispatcher received a call that the Home Federal Savings and Loan Association was robbed by three black males in ski masks. The dispatcher feeling that the robbery report and the information furnished by Euller the day before "kind of fit together," broadcast the description as a possible suspect car. Officer Dolan responded to this broadcast and relayed that he had seen a similar automobile just minutes before. This additional information was also broadcast.

A few minutes after receiving the call concerning the robbery, F.B.I. Agent Robert Harvey arrived at the scene and received from Officer Dolan the information concerning the automobile's description.

F.B.I. Agent Joseph O'Brien also arrived at the scene of the robbery shortly after it was reported and proceeded to interview Diane Wetzler. Wetzler described two of the men as being in their late teens or early twenties, one was light complexioned and short, while the other was taller and darker complexioned.. She could not describe the third man. O'Brien was then directed by Agent Harvey to the Project area of North Minneapolis to search for the car.

At approximately 11:00 a. m. on December 10, 1974 F.B.I. Agent Larry DeWitt arrived at the Powers Department Store to interview Euller concerning the two black men he had reported seeing the previous afternoon. Euller provided descriptions of the two men and of the gray and purplish automobile which DeWitt broadcast over his radio.

At 11:20 a. m. Officer O'Brien saw the suspect car parked near 608 Emerson Avenue, which was later determined to be appellant Loyd's address. Three black males approached the car, got in and drove away. One of the men was short and light complexioned. The suspects were followed first to another house and then to a grocery store. Several F.B.I. agents then arrested the

three appellants when they departed from the store, and transported them to the F.B.I. offices.

All three appellants signed waiver of rights forms and gave statements to the F.B.I. denying any participation in the robbery or in the purchase of the ski masks. Appellant Walls also signed a consent to search form for his Ford automobile, license number KD7652. A search of the car uncovered the following items: a piece of cardboard which matched pieces of a shoebox found west of the bank after the robbery and which was later identified as the shoebox carried out of Home Federal by the robbers; two Powers Department Store price tags in the amount of $3.50 each, two tags which said "orlon acrylic," and a receipt from Powers for $10.50. The tags matched those found on a ski mask later purchased at Powers by an F.B.I. agent, and the receipt contained Rosalind Martin's identification code # 409M.

At the time the appellants were placed in the Hennepin County Jail, the authorities took Green's clothing for future comparison with bank surveillance photographs.

Search warrants were obtained and executed at appellant Loyd's residence, 608 Emerson Avenue North, on December 10, 1974 and December 13, 1974. During the first search, agents discovered a Home Federal Savings and Loan Association courtesy bag in the linen closet. The bag was identical to one taken in the robbery. Three ski masks were discovered stuffed into a torn mattress in an upstairs bedroom. The masks were identical in design to those sold at Powers. There were also obvious similarities between the masks found in the mattress and those worn by the robbers as shown by the bank camera's surveillance photographs.

The second search of Loyd's residence uncovered a man's two-toned leather jacket with an attached electrical alligator clip.

On December 11, 1974 hair samples of the appellants were taken by court order and forwarded to an F.B.I. analyst. It was later discovered that these samples had similar characteristics to those found in the three ski masks.

The afternoon of December 11, Powers Security Guard Euller was shown a series of eleven photographs by F.B.I. Agent DeWitt. He identified appellants Loyd and Walls as the two men he had seen purchasing the ski masks two days before.

During the trial three months later, F.B.I. photographic analyst Joseph Avignon was allowed, over objection, to testify and compare the bank's surveillance film with black and white photographs taken of a model dressed in appellant Green's clothes and wearing the jacket taken from appellant Loyd's residence. This comparison revealed a number of detailed and unique similarities in designs, types and amount of wear between the clothes in the film and the clothes in the photographs.

Additional matters which came out at trial were the identification of appellant Walls by Home Federal Security Guard Wendell Mason and Teller Diane Wetzler. Mason stated that he recognized Walls at the bank but delayed in coming forth because he was a tenant of Walls' parents and did not want to get involved. Wetzler stated that she also felt she recognized Walls from the times he had stopped to give a ride to Mason, but did not think of it until she had heard that he was one of the men the authorities had arrested.

*Probable Cause*

■ Agents of the Federal Bureau of Investigation are authorized under 18 U.S.C. § 3052 to:

[M]ake arrests without warrant * * for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

The "reasonable grounds" specified in the above statute are equivalent to the probable cause requirements of the

Fourth Amendment to the United States Constitution. *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

The standard for probable cause for a warrantless arrest by authorities has been stated many times by the United States Supreme Court:

> "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States* [338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879]. Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288]. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *accord, Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

"Evidence required to establish guilt is not necessary." *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

■ Examining the facts available to the arresting officer in this case, it becomes quite apparent that probable cause existed for a reasonably prudent arresting officer to believe that appellants were the three men who were being sought for the robbery of the Home Federal Savings and Loan Association. We do not approach these facts separately as appellants want us to do, "but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the totality of the circumstances." *United States v. Peep,* 490 F.2d 903, 907 (8th Cir. 1974); *Jackson v. United States,* 408 F.2d 1165 (8th Cir.), *cert. denied,* 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 114 (1969). These facts do not need to be solely those known by the arresting officer. "[I]n the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause. The arresting officer himself need not possess all of the available information." *United States v. Stratton,* 453 F.2d 36, 37 (8th Cir.), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972).

The collective facts that the F.B.I. had at hand prior to the arrest were that two black men in a gray and purple Ford, license number KD7652, had purchased ski masks the afternoon prior to the robbery; one of the men had a moderate Afro hair style while the other man's hair was more wavy; that just prior to the robbery, three black men, one wearing a ski mask, were observed in a maroon and gray Ford only one block from the Savings and Loan; that three black men wearing ski masks robbed the Home Federal Savings and Loan, one of the men being short and light complexioned; that three black men, one short and light complexioned, were seen getting into a maroon and gray Ford, license number KD7652 and driving to a grocery store. The cumulative effect of such facts in the totality of the circumstances can only be that probable cause existed for the arrest of appellants Green, Loyd and Walls as they were leaving the grocery store.

Further comparison of the existing facts to current case law dealing with probable cause issues does not seem necessary or beneficial. However, the facts supporting probable cause here do appear to be analogous to other factual situations specifically approved either by the United States Supreme Court or by this court. *See Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Heisman,* 503 F.2d 1284 (8th Cir. 1974); *United States v. Young,* 456 F.2d 872 (8th Cir. 1972); *United States v. Berryhill,* 466 F.2d 621 (8th Cir. 1972). A finding of probable cause for the arrest of the appellants is

supported by these decisions as well as by the objective facts.

*Consent to Search*

■ Appellant Walls was interviewed by F.B.I. agents at the Bureau's offices in Minneapolis. Before the interview, Walls was informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant read these rights, signed a voluntary waiver, and proceeded to tell the agents he had nothing to do with any robbery.

The agents then requested consent to search the appellant's automobile. Walls was given a consent to search form which he signed. From the testimony given during the suppression hearing below, it seems apparent that Walls was not told that he had to sign the form. He was not coerced either verbally or physically to sign it. The signing was voluntary after being fully informed of his rights.

The Supreme Court of the United States has not ruled on the precise issue of custodial searches, but its guidance through the decision in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), is helpful to the instant situation. In *Schneckloth* the Court held:

> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Voluntariness is a question of fact to be determined from all the circumstances. Id.* at 248, 93 S.Ct. at 2059. [Emphasis added.]

The "totality of circumstances" test has since been applied by a number of courts to in-custody "consent" searches to determine if the consent was voluntary. *See, United States v. Boston,* 508 F.2d 1171 (2nd Cir. 1974); *Hayes v. Cady,* 500 F.2d 1212 (7th Cir. 1974); *United States v. Heimforth,* 493 F.2d 970 (9th Cir. 1974); *United States v. Garcia,* 496 F.2d 670 (5th Cir. 1974).

Looking at the totality of circumstances in the instant case, it is difficult to find any support for the appellant's position. He signed the consent to search form shortly after his interview with the authorities began and there is no evidence that he was verbally or physically abused prior to signing the form. There is substantial evidence to support the district court's decision not to suppress the evidence gained in the search of the car. It is thus not the privilege of this court to revise that decision on appeal. *Drummond v. United States,* 350 F.2d 983 (8th Cir. 1965).

*Expert Testimony on Photographs*

■ The question of whether an expert shall be allowed to testify or whether the probative value of his testimony is outweighed by its prejudicial effect is solely within the discretion of the trial court. This court should not reverse the trial court's decision unless it is prejudicial to the appealing party. *Brinlee v. United States,* 496 F.2d 351 (8th Cir. 1974); *United States v. Cochran,* 475 F.2d 1080 (8th Cir. 1973).

■ In the instant case the expert gave his opinion as to the unique and specific similarities between the clothes worn by one of the robbers, as shown by the surveillance photographs, and Green's clothes, worn by a model in the black and white photographs taken by the F.B.I. This testimony is different than the testimony disapproved of in *United States v. Brown,* 501 F.2d 146 (9th Cir. 1974), cited by the appellant. In *Brown,* the expert testified as to general facial similarities between the surveillance photographs and later photographs taken of the defendants. The Ninth Circuit held that such a general comparison by an expert invades the province of the jury and should be excluded. However, *Brown* made other findings which support the use of the expert testimony in the instant situation.

The *Brown* Court found that it is not an abuse of discretion for a court to allow expert testimony concerning facial similarities if the testimony is not limited to general comparison, but in fact goes into detailed comparisons such as was done in *United States v. Cairns*, 434 F.2d 643 (9th Cir. 1970).

The *Brown* decision goes against the appellant's position in yet another, even more important, way:

> [T]rial courts * * * should be cognizant that while the everyday experiences of twelve laymen over their combined lifetimes may permit them to make photographic comparisons of persons, *they may utterly lack experience to distinguish or recognize certain objects* such as firearms. *Id.* at 149–50. [Emphasis added.]

The expert in this case focused on the unique and specific similarities between the clothes worn by the men in the separate photographs. It is reasonable to assume that a jury of twelve laymen would not have the experience to note the unique curl of the cuffs of the jacket, the electrical alligator clip, the crease in the pants cuff, the way the seams of the pants lined up, the worn spots on the pants, and the eyelets and lacing of the shoes. Such testimony by the expert was an aid to the jury in its decision. Its probative value outweighed its prejudicial effect and the district court was correct in allowing the testimony.

*Photographic Display*

■ Security Guard Euller was presented with a series of eleven photographs the day following the robbery. The photographs contained traditional mug-shots and what counsel has termed home snap-shots. The home snap-shots were of the three appellants. Euller positively identified Loyd and gave a tentative identification of Walls as the two men who purchased ski masks on December 9, 1974. Euller's in-court identification of Loyd was less positive because of Loyd's haircut.

The United States Supreme Court has stated:

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was *so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *accord, Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) [Emphasis added].

In *Neil v. Biggers, supra* at 196, 93 S.Ct. 375, the Court stated that a decision of whether a defendant's due process rights were violated by an identification procedure depended on the "totality of the circumstances" surrounding the identification. The factors to be evaluated include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.* at 199–200, 93 S.Ct. at 382.

In the instant case, the "totality of the circumstances" can lead us to only one result. The photographic display shown to Mr. Euller was not impermissibly suggestive. At the time the two black males were seen going into the Powers Department Store, Euller stated that he felt the security of Powers might be threatened. He therefore paid very close attention to the two men and their activities while in the store, observing them at a close distance for over five minutes. His description of the two men he observed was a fairly accurate description of appellants Walls and Loyd. His identification of Loyd was consistently positive throughout the period be-

tween the robbery and trial. The sole exception was the doubt he expressed during the suppression hearing two months after the robbery, when Loyd appeared with shorter hair.

Based on these factors, there is not a very substantial likelihood that Loyd was irreparably misidentified as one of the two black males who purchased the ski masks the day prior to the robbery. The trial court was not in error in allowing Euller's identification testimony to be presented to the jury.

*Sufficiency of Evidence to Convict Loyd*

In examining this issue the court must be guided by the principles that: "The sufficiency of the evidence is to be tested by viewing it in its entirety and in the light most favorable to the government and accepting as established all reasonable inferences therefrom." *United States v. Kelton*, 519 F.2d 366, 367 (8th Cir. 1975); *United States v. Buckhanon*, 505 F.2d 1079 (8th Cir. 1974). It is also clear that a commission of a crime may be established by and a conviction for that crime may rest upon circumstantial evidence. *United States v. Robinson*, 419 F.2d 1109 (8th Cir. 1969).

■ In looking at the circumstantial evidence connecting appellant Loyd to the robbing of the Home Federal Savings and Loan Association and accepting it in the light most favorable to the verdict, it is clear that there was substantial evidence by which the reasonable persons on the jury could find the appellant guilty beyond a reasonable doubt. *See, United States v. Montgomery*, 503 F.2d 55 (8th Cir. 1974).

Loyd and appellant Walls were identified as the men who arrived at the Powers Department Store the day prior to the robbery in a gray and purple Ford and left after purchasing ski masks. The ski masks were identical to those used in the robbery, and a sales slip and tags from the purchase of the masks were found in the same car following the robbery. The car also contained a scrap of cardboard that subsequent investigation connected to a shoebox taken during the robbery. Ski masks, identical to those purchased, were discovered hidden in a mattress in Loyd's home following the robbery. A Home Federal Savings and Loan courtesy bag, identical to one taken in the robbery, was also discovered in Loyd's home during the subsequent search.

Loyd was arrested in the company of two men, one of whom was identified by eye witnesses as being one of the robbers, and the other matching the description of the third participant. They were arrested after departing from Walls' automobile which fit the description of the automobile seen by two separate witnesses in the vicinity of the Savings and Loan just prior to the robbery. Loyd's hair matched that discovered in the ski masks, which Loyd had denied purchasing. Additionally, the denial of purchasing the masks could also be considered as circumstantial evidence by the jury. *See, Mikus v. United States*, 433 F.2d 719 (2d Cir. 1970).

It seems clear that the trier of fact when faced with this substantial circumstantial evidence could find the appellant Loyd guilty beyond a reasonable doubt of violating 18 U.S.C. § 2113(a) and (d) or for aiding and abetting under 18 U.S.C. § 2.

*The Aiding and Abetting Instruction*

■ The instruction given by the trial court was substantially the same as an instruction approved by this court in *United States v. Wright*, 459 F.2d 65 (8th Cir. 1972). Loyd's counsel orally requested additional instructions to the effect that the jury could not find Loyd guilty of aiding and abetting if it found that the "evidence only shows he had knowledge of the crime after it was committed." The trial court's instruction was proper and since there was substantial evidence presented by which the jury could have found that Loyd had prior knowledge of the robbery, the appellant's requested instruction would not have changed the outcome, and therefore was non-prejudicial.

The appellants were properly tried and convicted. The judgment of the district court is affirmed.