**UNITED STATES of America**
v.
**James Albert KING, Auther Larnce King, Charley Thomas Malone, Wallace Van Meter, Jr., Edwin Dean Ward.**
**No. CRG 6939–K.**

United States District Court
N. D. Mississippi,
Greenville Division.
Oct. 30, 1969.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff.

Murray L. Williams, Water Valley, Miss., Warner Hodges, George C. Harrison, Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This is a criminal prosecution against five defendants, James Albert King, Auther Larnce King, Charley Thomas Malone, Wallace Van Meter, Jr., and Edwin Dean Ward, on charges of conspiring to violate the federal liquor laws, illegally possessing nontax-paid whiskey, and illegally fermenting mash fit for distillation.[1] All defendants have moved to suppress certain evidence on the ground that it is the fruit of an illegal search by state and federal officers. After evidentiary hearing and submission of memorandum briefs, the case is now before the court for decision upon those motions.

On January 7, 1969, an unidentified person notified Arthur Floyd, an agent of the Mississippi Alcoholic Beverage Commission, that he had observed some suspicious barrels containing grain in an old barn near an unoccupied farmhouse north of Carrollton, Mississippi. This informer, who had not previously furnished information to law enforcement officers, told Floyd that he had seen these barrels the previous day while bird hunting about 3 miles north of Carrollton, that he had never before seen a still, but that this might be one. The informer and Floyd had never met

---

1. 18 U.S.C. § 371, 26 U.S.C. §§ 5601(a) (1), (4), (7), (8), 5602, 5604(a) (1), 5691(A), and 7206(4).

prior to that occasion, and neither knew who owned the premises in question.

On the following morning, January 8, agent Floyd, in company with another State A.B.C. agent and two federal officers, drove north on the gravel road from Carrollton to Greenwood to investigate the information received. About 3 miles north of Carrollton they spotted an old farmhouse and nearby barn which appeared to be the property that had been described by the informer. Concealing their car about 1000 feet south of the house, the officers proceeded on foot through a field northwardly to a gully located about 400 feet south of the house. The officers hid in the gully and observed the premises. It was approximately 10 o'clock, a. m., on a cold, dry day. From this vantage point they could see the east and south sides of the barn, which was located about 50 yards distant. They observed six pickup trucks parked between the house and barn; two of the trucks the officers recognized as belonging to defendants, James Albert King and Auther Larnce King, who were known to be federal liquor law violators. They also observed several butane bottles and an acetylene tank and hose outside the barn, and a freshly dug trench leading from the barn to a nearby pond. At first the officers observed no one in sight, but they heard coming from inside the barn voices and a bumping noise, like metal striking together. Shortly thereafter two defendants, Auther Larnce King and Wallace Van Meter, Jr., came out of the door on the east side of the barn and stood in conversation approximately 40 feet away from the barn door. Deciding to raid, the officers then moved forward quickly with drawn pistols, placed the two defendants under arrest and handcuffed them. From the point of arrest, the officers then saw through the open barn door some 40 feet away and observed a person running inside, a still pot which was not yet set up, barrels and sugar stacked on the ground. James Albert King was also seen inside the barn kneeling on the ground. Federal Agent Krohn, who had observed all this at the point of arrest, entered the barn and arrested two other defendants, James Albert King and Edwin Dean Ward. Later, the fifth defendant, Charley Thomas Malone, was arrested when he drove up in a pickup truck carrying butane gas cylinders and other supplies.

Following the initial arrests, the agents searched the barn and seized various items, including a large tank suitable for use as a still, two butane burners, 41 55-gallon barrels containing mash, quantity of sugar, several full gas cylinders, electric pump, a set of copper lead lines and other component parts for a distillery operation. No moonshine whiskey was found in the barn. The officers searched the dwelling house, into which defendant Malone had moved the day before and found nothing incriminating; they also broke a padlock to a small shed to the rear of the house described as a "smokehouse", finding therein 96 one-gallon jugs of moonshine whiskey. After a thorough search of the entire area, the officers took photographs of the premises and the various items seized. Before departing, they destroyed the still equipment and chopped holes in all of the barrels found in the barn. The entire process of arrest and search consumed approximately 5 hours, ending at about 4 o'clock in the afternoon.

It is undisputed that the officers had neither arrest warrants nor search warrants and they went to the premises solely to investigate the informer's tip. Prior to their entry upon the farm premises, no permission was sought or obtained from anyone. The officers claimed that before the initial arrest, they could detect the odor of mash emanating from the barn. The government claims that the smell of mash, coupled with the other circumstances, gave the officers reasonable cause to believe a crime was being committed in their presence and thus made the arrests lawful; and moreover, the search of the barn, smokehouse and residence were incident to lawful arrest. Defendants stoutly

maintain that their Fourth Amendment rights were violated.[2]

▪ Where officers are not responding to an emergency (and none here existed), there must be compelling reasons to justify the absence of a search warrant, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); and a search without a warrant demands exceptional circumstances. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). An exception to the rule requiring a warrant is the case of a search pursuant to a lawful arrest; and for a warrantless arrest to be lawful and capable of supporting an incidental search, the arresting officers must have had probable cause to believe a crime was being committed in their presence. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Smith v. United States, 357 F.2d 486 (5 Cir. 1966). (This exception has been codified in 26 U.S.C. § 7608(b) (2) (B), which states an Internal Revenue officer is authorized "to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony.")

In the case at bar, where the officers had no arrest warrant, their only reasons for believing a crime was being committed in their presence were the highly inconclusive tip from an unproven source and the smell of mash allegedly emanating from the barn. The presence of butane cylinders, acetylene equipment and the ditch leading to a pond was without significance. The officers' mere suspicions, based on certain defendants' prior liquor law violations, would not justify an arrest. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

▪ Although it is well established that the government need not reveal the identity of its informers, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. One 1960 Ford Convertible, 209 F.Supp. 247 (S.D.Miss.1962), if the informer's reliability is unproven, his information alone is not probable cause sufficient to support a warrantless arrest, but must be reasonably corroborated by other evidence within the officer's knowledge. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

▪ The only corroborating evidence the officers asserted they had when they first arrested two of defendants was the odor of mash coming from the barn. The smell of mash, if established to the satisfaction of a court, is sufficient basis under proper circumstances for officers to believe that a crime is being committed in their presence, McBride v. United States, 284 F. 416 (5 Cir. 1922); Smallwood v. United States, 68 F.2d 244 (5 Cir. 1933); Walker v. United States, 225 F.2d 447 (5 Cir. 1955).

▪ However, the testimony in the case at bar was sharply conflicting as to when and where one could actually smell any mash. Agent Krohn admitted that the still was not in operation and had not been connected up; that the still "cooker" itself contained no mash, and that the only mash he saw inside the barn was fermented rye left in the bottom of the 55-gallon barrels. According to Krohn, the liquid had already been skimmed off the top of the mixture, leaving only a slightly moist rye. Other evidence showed this condition had ex-

---

2. The Fourth Amendment to the Constitution of the United States provides:
 "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**634**

isted for about two weeks and that there was a mold on top of the rye. It is uncontradicted that when the officers chopped holes in the barrels no liquid ran out. These physical facts are highly persuasive. There was no other source for an odor of mash, and defendants testified that this dry material produced only a slight odor, not at all detectable from outside the barn or from the gully where the officers had hidden some distance away. Nor does it appear that the informer two days earlier had detected an odor of mash prior to entering the barn. Since the officers could not have smelled dry mash from their observation point, they had only the tip from an anonymous informer and their own suspicion, aroused upon recognizing the parked pickup trucks, to rely on. These two elements were not sufficient to constitute probable cause to arrest defendants. The two defendants, Auther Larnce King and Wallace Van Meter, Jr., when emerging from the barn, were not engaged in known criminal conduct in the presence of the officers, nor did the officers then have reasonable grounds to believe that any defendant was committing a felony cognizable under the Internal Revenue Laws. Thus, since the first arrests were illegal, the subsequent search and ensuing arrests inside the barn cannot be reasonably justified under the circumstances.

 Despite contrary assertion of the government, the barn, smokehouse and other out-buildings searched were a part of the curtilage of the farm residence, which was in control of defendant Malone, and such buildings were sufficiently near the dwelling house to be within the protection of the Fourth Amendment. Under no circumstances could the search be justified as an "open field" search. In Walker v. United States, supra, the Fifth Circuit expressly held that the warrantless search of a barn was an unlawful invasion of protected curtilage in circumstances almost identical to those of the instant case. Not only Malone, the tenant of the property, but the other defendants have the right to object to an illegal search. "[A]nyone legitimately on premises where a search occurs may challenge its legality * * * when its fruits are proposed to be used against him." Jones v. United States, 362 U.S. 257 at 267, 80 S.Ct. 725 at 734, 4 L.Ed.2d 697 at 706 (1960); Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

The evidence shows that all arrests in this case were inseparably linked together and directly brought about by lawless actions of the arresting officers. No single arrest is shown to stand upon a valid ground independently of the others. All arrests must, therefore, be held invalid. It follows that searches and seizures made pursuant to those arrests were violative of constitutional rights, and the fruits of those searches and seizures are inadmissible in this court.[3]

Defendants' motions to suppress are sustained.

---

3. Having decided that the arrests themselves were invalid, thereby automatically invalidating the incidental search, we pretermit as unnecessary a discussion of the permissible extent of the search under the rule announced in Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).