**UNITED STATES of America**

v.

**Rafael R. ROMERO and Tito Caamano, Defendants.**

**No. 72 Cr. 269.**

United States District Court, S. D. New York.

June 6, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, New York City, for the United States by Robert T. Hartmann, New York City.

Edward S. Panzer, New York City, for defendant Caamano.

Abraham Solomon, New York City, for defendant Romero.

GURFEIN, District Judge.

### MEMORANDUM

This is a motion by the defendants to suppress the evidence consisting of approximately 1,733 grams of marihuana. The defendants are charged in a single count information with the possession of marihuana in violation of 21 U.S.C. § 844 and 18 U.S.C. § 2. A hearing was held and decision was reserved.

Two agents of the Bureau of Narcotics and Dangerous Drugs testified for the Government and I find their testimony to be credible. It may be summarized as follows:

On September 16, 1971 at about 6 p. m. Agent Beachell was told by an informant that a group of young Cuban males were trafficking in marihuana, utilizing a 1964 white Oldsmobile, New Jersey registration RJH 370. The informant named the traffickers as Elliott Ricardo, Tarzan, Rafael and Miguel Bartley. He described these Cubans as "short medium in height" and medium weight and build, and stated that they came primarily from New Jersey.

The informant told the Agent that he himself had dealt with and purchased

marihuana from these individuals and that on one occasion he himself had observed approximately 70 pounds of marihuana in the trunk of the automobile mentioned. The informant also stated that he had observed this automobile in the vicinity of 77th and 78th Streets between Amsterdam and Columbus Avenues, New York City, almost every evening. Following this conversation Agents Beachell and Dunham conducted a surveillance at the corner of 79th Street and Amsterdam Avenue. About 10 p. m. Agent Beachell observed Tito Caamano having conversations with several individuals and moving from corner to corner at that location. On one occasion Caamano passed an envelope to an individual and received money for it. In the light of his experience, Agent Beachell believed this to be a narcotics transaction, probably marihuana.

After the transaction had taken place Caamano continued to have several conversations with other individuals. At one point he was met by three other males and a female and began to walk South on Amsterdam Avenue. Agent Dunham followed on foot while Agent Beachell circled the area in the Government vehicle. Reaching the corner of 78th Street and Amsterdam Avenue, Agent Beachell observed Dunham who was pointing East on 78th Street, indicating that the people he was following had gone in that direction. Driving slowly up that street Beachell observed the 1964 Oldsmobile that had been described to him by the informant with Rafael Romero, keys in hand, about to enter it and Tito Caamano seated on the passenger side. He placed them under arrest and advised them of their constitutional rights. He asked Romero for the keys to the car and then proceeded to open the trunk. Romero stated that the only thing Beachell would find was clean laundry. Beachell found 4 bags of marihuana weighing approximately 4 pounds in the trunk. Agent Dunham testified that he later searched the vehicle and found about an ounce of marihuana stuffed under the driver's seat.

The Court asked him why he did not obtain a warrant, and Agent Dunham stated that the Agents had gone to that location expecting merely to conduct a surveillance, and that when they saw the observed transaction and the subject's suspicious actions the Agents did not have time to get a warrant.

Upon questioning by the Court it appeared that Agent Beachell had known the informant for a month, that he had dealt with him before and that from the Bureau point of view the informant had proved successful.

■ Since the evidence was seized as a result of the search of Rafael Romero's car and the search was made without a warrant, it would be a presumptively unreasonable search unless covered by an exception. There was such an exception if the search was incident to a lawful arrest, or if there was probable cause for the search itself, regardless of the lawfulness of the arrest. The Government, of course, has the burden of showing that a warrantless arrest was valid. Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

The search was clearly incident to the arrest. It was contemporaneous with the arrest and was "confined to the immediate vicinity of the arrest." See Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969); Chimel v. California, 395 U.S. 752, 764, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). One defendant, Caamano, was in the car, and the other, Rafael Romero, was at the car with keys in hand. In connection with the arrest it was reasonable to search the automobile for weapons and for contraband.

■ To support the search as a proper incident to a warrantless arrest, the arrest must have been lawful. Chimel v. California, *supra*. The arresting officer must have had authority to arrest, and the arrest must be based on probable cause. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The agents of the Bureau of Narcotics had specific statutory authority to make the arrest without a warrant for violations of any law relating to marihuana "where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation." 26 U.S.C. § 7607(2).

■■ "Reasonable grounds," the language used in this statute, means the same as "probable cause." See Draper v. United States, 358 U.S. 307, 310 n. 3, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Acarino, 408 F.2d 512, 514 n. 2 (2 Cir.), cert. denied, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969). We come back, therefore, to the meaning of "probable cause" as a constitutional requirement. As the Supreme Court said in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949): "In dealing with probable cause, however, as the very name implies, we deal with probabilities. . . 'The substance of all the definitions' of probable .cause 'is a reasonable ground for belief of guilt.'" That is the touchstone in this Circuit. See United States v. Soyka, 394 F.2d 443, 453–454 (2 Cir. in banc 1968) (arrest in an apartment), cert. denied, 393 U.S. 1095, 89 S.Ct. 883, 21 L.Ed.2d 785 (1969). The grounds for establishing probable cause for an arrest without a warrant are basically similar to those required for the issuance of a warrant. Spinelli v. United States, 393 U.S. 410, 417 n. 5, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969).

■■ The Government Agent testified that the informant had been known to the Agent for a month and that the Bureau had had successful dealings with him; in short, that there was reason for the Agent to believe him reliable. A reliable informant's report alone may be sufficient to establish probable cause. United States v. Acarino, *supra*; United States v. Campos, 255 F.Supp. 853 (S.D. N.Y.) aff'd, 362 F.2d 1011 (2 Cir.), cert.

denied, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966). See Draper v. United States, *supra*, 358 U.S. at 313, 79 S.Ct. 329. But even a freshman informant may make sense enough to be believed if his information is not itself suspect as hearsay, and it is corroborated by observation or otherwise.

■ The trier of facts must, however, be given the basis for making his own evaluation. In Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the Supreme Court found a lack of probable cause, because the affiant-officers did not attempt to support their claim that their "informant . . . was 'credible' or his information 'reliable.'" See Spinelli v. United States, *supra*, 393 U.S. at 413, 89 S.Ct. at 587.

In *Spinelli*, the Court undertook to explicate its decision in *Aguilar*. In *Spinelli*, "Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion." "[E]ven more important . . . [t]he tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him." 393 U.S. at 416, 89 S.Ct. at 589. The Court held that reliance on a mere "casual rumor" was insufficient. The Court assumed it was dealing with hearsay upon hearsay.

The issue here is whether the facts relied upon to show probable cause are more like those in *Aguilar* and *Spinelli*, or more like those in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) and Draper v. United States, *supra*.

In *McCray*, the officer had been told by an informant that the petitioner, with whom he had been acquainted "was selling narcotics and had narcotics on his person and that he could be found in the

vicinity of 47th & Calumet." The officers drove there. The informant pointed out the petitioner and left. The officers saw petitioner do nothing that was particularly incriminating except possibly that they saw petitioner after seeing the police car, "hurriedly walk[ing] between two buildings." The Court held (at 304, 87 S.Ct. at 1059) that "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

In *Draper, supra*, an agent was told by an informer who had been a "special employee' of the Bureau for six months and whose information the agent had always found to be accurate and reliable, that the petitioner was peddling narcotics, had gone to Chicago to obtain a supply and would return on a certain train on a certain day or the day after. Without more, the agents, recognizing the petitioner from the informant's description, arrested him, seached him and seized the narcotics in his possession. The Court held that there was "probable cause."

I need not distinguish Williams v. Adams, 441 F.2d 394 (2 Cir. 1971),* reversing in banc 436 F.2d 30 (2 Cir. 1970), for the facts there were different and weaker for a showing of probable cause. I assume that the "constitutional parameters" are laid down in *Draper, supra*, where the combination of information and observation was held sufficient for a warrantless arrest and *Aguilar* and *Spinelli, supra*, where affidavits for search warrants were held insufficient. See Williams v. Adams, 436 F.2d at 35–36.

In the case at bar there was an informant, though unidentified, whom the Agent had known for a month and with whom he had successful dealings, presumably in narcotics law enforcement, since that was the Agent's only field. The informant, according to the Agent, stated that he had actually dealt with and purchased marihuana from a group of named individuals and had personally observed approximately 70 pounds of marihuana in the trunk of a described automobile. One of the individuals named (though his name was not yet known) and the car described were observed at the place where the scenario put them. The test of personal observation by the informant is met; this is not a case of "casual rumor." The second test of reasonable corroboration by the Agents is also met. For not only were the automobile and the individual suspects described in recognizable fashion, but the location of the car was accurately given. Finally, the Agents saw Caamano moving from street corner to street corner, talking to several individuals and passing an envelope to one of them and receiving money, and then meeting Rafael in the already identified car.

I conclude that a prudent agent, versed in the methods of the marihuana peddler, had reasonable cause to believe that marihuana sales were being negotiated in his presence.

While, even in such case, it is better to get a warrant, the failure to obtain a warrant of arrest was satisfactorily explained by the lateness of the hour, and the unexpected success of the observation of the suspects on the very first encounter at night.

The motion to suppress the evidence is denied.

* Cert. granted, 404 U.S. 1014, 92 S.Ct. 670, 30 L.Ed.2d 661 (1972).