UNITED STATES of America, Appellant,

v.

**Dominic TORTORELLO, Defendant-Appellee.**

**No. 775, Docket 75–1376.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1976.

Decided April 1, 1976.

---

Ronald L. Garnett, Asst. U. S. Atty., New York City (Thomas J. Cahill, U. S. Atty., and James A. Moss and John D. Gordan, III, Asst. U. S. Attys., of counsel), for appellant.

Irving Anolik, New York City (Joseph P. Carrozza, New York City, of counsel), for defendant-appellee.

Before HAYS, MULLIGAN and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

The United States appeals, pursuant to 18 U.S.C. § 3731, from an order of the United States District Court for the Southern District of New York, Lloyd F. MacMahon, *Judge*, suppressing certain stolen coffee as well as certain statements of the defendant Dominic Tortorello ("Tortorello") as evidence against him at trial.

On April 25, 1973, Frank Hoffman ("Hoffman") and Tortorello, while driving a van containing some 50 boxes of allegedly stolen coffee, were apprehended in Brooklyn by New York City police officers. The next day both suspects gave statements in the Brooklyn House of Detention to FBI agent Lester Hay after being informed of their rights and executing waiver forms. They were subsequently released.

On the morning of April 30, 1973, Hay and three other agents, without search or arrest warrants, went to 2258 Hermany Avenue in the Bronx, where Hoffman lived on the first floor with his family. Hoffman's parents-in-law, who are also parents of Tortorello, resided on the second floor. At the back of the two-family house is a detached three-car garage connected to the street by a driveway. The house has a basement. Although Tortorello formerly lived in this house, he moved out in August 1972, when he was married.

As Agent Hay approached the front door, other agents walked down the driveway to the back of the house and looked into the garage through a window. They saw some fifty boxes of coffee and told Hay of their discovery. Hay met with Hoffman and advised him that the agents had seen coffee in the garage. The agents obtained permission from Hoffman to conduct a search of his residence on the first floor of the house. The search turned up nothing. The agents and Hoffman then went to the garage, and, with Hoffman's consent, the agents entered and examined the cartons of coffee. Hay, thereupon, asked Hoffman for permission to search the second floor of the house, but Hoffman refused, saying that it would upset his parents-in-law who were ill. The agents also asked Hoffman for his consent to search the basement. Hoffman refused to consent on the ground that he had no authority to allow such a search. The agents then requested Mrs. Hoffman to telephone her brother, defendant Tortorello, to come over. Tortorello arrived at the house some fifteen minutes later. The agents asked Tortorello to come into their car. There they advised him of his constitutional rights and asked his permission to search the basement. The agents informed Tortorello that they had seen the coffee in the garage, and that they felt they could get a search warrant for the basement if he refused to consent to the search. Tortorello then signed a written consent to the search of the basement. The agents were taken to the basement by Tortorello where they found 250 boxes of coffee.

On July 23, 1975, defendants Hoffman and Tortorello were indicted. The indictment charged that on April 23, 1973, they unlawfully received, concealed and stored 250 boxes of coffee (presumably the coffee which was found in the basement during the April 30, 1973 search), moving as part of an interstate shipment, knowing the same to have been stolen, in violation of 18 U.S.C. § 2315.

On August 14, 1975, Hoffman and Tortorello moved to suppress: (a) certain statements made by them; (b) the 50 boxes of coffee found in the van they were driving when they were stopped by the New York City police on April 25, 1973; (c) the 50 boxes of coffee found on April 30, 1973 in the garage adjacent to the Hermany Avenue house; and (d) the additional 250 boxes of coffee seized the same day by the agents in the basement of the house.

An evidentiary hearing on the motion was held on August 26, 1975. On August 27, Judge MacMahon announced from the bench that the search of the garage and the basement at 2258 Hermany Avenue had been illegal and that the coffee so discovered and any statements taken then or thereafter would be suppressed. An order to this effect was filed on September 3, 1975. The Government conceded, at that time, that since Tortorello was charged with a possessory crime, he had standing, under the "automatic standing" rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), to move to suppress any evidence seized in violation of the Constitution. Judge MacMahon, quite understandably, accepted this concession at the time as a correct statement of the governing law.

On October 2, 1975, the Government moved to reargue the suppression motion as to Tortorello on the ground that he lacked standing to complain of the search of the garage and that it was the illegality of the garage search that had impelled the District Court to suppress the coffee later found in the basement, together with Tortorello's later statements. In a written opinion, on November 14, 1975, Judge MacMahon indicated that he now agreed

with the Government's present position that Tortorello did not have standing to challenge the search of the garage and that, with respect to the coffee found in the search of the basement, Tortorello had voluntarily consented to that search. He found, however, that the Government's motion for reargument was not timely made.

The appeal is from Judge MacMahon's *original* order of September 3, 1975, which granted defendants' motion to suppress, and with which Judge MacMahon later disagreed in his careful opinion of November 14, written for the benefit of this court.[1]

We agree with Judge MacMahon's later opinion that appellee Tortorello lacked standing to challenge the search of the garage and that he had voluntarily consented to the search of the basement. Accordingly, we reverse the original suppression order of the District Court.

## I

■■■ Appellee initially contends that the Government may not argue before the Court of Appeals that Tortorello lacked standing because it had agreed in the District Court that appellee did have standing to challenge the legality of the searches. We disagree. The only "concession" on Tortorello's standing was made in the context of rebutting an argument that Tortorello's consent was unavailing because he had no authority to consent to the search of the basement. In any event, whether Tortorello has standing to challenge the legality of the searches is a question of law. A

concession by the Government on a question of law is not binding on the court. See *United States v. Lisk*, 522 F.2d 228, 231 n. 8 (7 Cir. 1975) (Stevens, *J.*). See also *Estate of Sanford v. Commissioner*, 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20, 26 (1939). The Government is free to argue in this court that appellee has no standing to suppress the coffee found in the garage.

## II

The law regarding standing to suppress materials derived from an illegal search in the case of an offense where possession is an essential element has been evolving in recent years. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), held that a person charged with possession of property that had been seized illegally had "automatic standing," as a "person aggrieved" within Fed.R.Crim.P. 41(e), to challenge its admissibility, even though the defendant testified that the property seized was not his and that the place of arrest was not his home.[2] The court fixed upon an "automatic" standing rule, in such cases, to avert the unfairness of the dilemma to which the defendant would otherwise be put, that to achieve standing he must claim possession, even though his admission of possession would deal him a fatal blow at trial. Judge Learned Hand in *Connolly v. Medalie*, 58 F.2d 629, 630 (2 Cir. 1932), had recognized the dilemma but held, nevertheless, that a defendant could not "secure the remedies of a possessor, and avoid the perils of the part." *Jones* avoided Judge Hand's dilemma by holding that standing will be

---

1. On January 13, 1976, we dismissed the appeal as to Hoffman on the Government's motion. Only the appeal as to Tortorello is now before us.

2. Justice Frankfurter in *Jones* said that "[t]he issue of petitioner's standing is to be decided ·with reference to Rule 41(e) of the Federal Rules of Criminal Procedure." 362 U.S. at 260, 80 S.Ct. at 730, 4 L.Ed.2d at 702. At that time Rule 41(e) provided that "[a] person aggrieved by an unlawful search and seizure" may move for return of the property and to suppress for use as evidence anything illegally obtained. *Jones* reasoned, relying on the language of the rule, that a "person aggrieved" included one who may have owned the seized property but

who could not assert his rights because he was charged with the very possession he must prove to establish his standing.

Rule 41 was amended in 1972, and the amended rule no longer specifically states that only an "aggrieved person" may move to suppress evidence. However, the Court has noted that the old Rule 41 merely "conforms to the general standard and is no broader than the constitutional rule." *Alderman v. United States*, 394 U.S. 165, 173 n. 6, 89 S.Ct. 961, 966, 22 L.Ed.2d 176, 186 (1969). We conclude, therefore, that despite Justice Frankfurter's emphasis on the language of former Rule 41(e), it was not the key to his decision in *Jones*.

presumed if the defendant would have to prove his guilt of the crime in order to establish his standing. Although the *Jones* Court reached this result in possession cases, it indicated that in cases not involving an offense of "possession" the defendant must establish "that he himself was the victim of an invasion of privacy." 362 U.S. at 261, 80 S.Ct. at 731, 4 L.Ed.2d at 702.

In 1968, the Court prohibited the prosecution from using the testimony of a defendant on the suppression hearing at his subsequent trial. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). While *Simmons* did not itself involve a "possessory" crime, its exclusionary rule tended to extricate the defendant from the dilemma which had concerned the *Jones* Court, as well as this court, in the "possession" cases.

The Court, thereafter, in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), recognized that the *Jones* dilemma had been diluted by the *Simmons* exclusionary rule.

When arrested with a truck full of stolen goods, the appellants in *Brown* confessed that they had stolen *other* goods two months earlier, and had sold them to one Knuckles. The police searched Knuckles' store on a defective warrant, while the appellants were not present but in custody, and found the goods which had been stolen two months earlier. Knuckles moved to suppress the evidence against him, successfully, but the District Court denied appellants' motion for lack of standing, and the stolen merchandise seized from Knuckles' store was later received in evidence.

The offense charged in *Brown* was conspiracy to transport as well as actual transportation of stolen goods in interstate commerce in violation of 18 U.S.C. § 2314. The indictment alleged that the conspiracy had ended the day *before* the illegal search of Knuckles' store. Since "[t]he stolen goods seized had been transported and 'sold' by petitioners to Knuckles approximately two months before the challenged search," the Court concluded that "[t]he vice of allowing

the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present," and that "[t]he Government cannot be accused of taking 'advantage of contradictory positions.' *Jones v. United States, supra,* [362 U.S.] at 263, 80 S.Ct. at 732." 411 U.S. at 229, 93 S.Ct. at 1569, 36 L.Ed.2d at 214. The Court emphasized that "we do not decide that this vice of prosecutorial self-contradiction warrants the continued survival of *Jones'* 'automatic' standing now that our decision in *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such 'automatic' standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction." *Id.*

■ The Court accordingly found that there was no standing to contest a search and seizure where, as there, the defendants: "(a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." *Id.*

In our case, Tortorello did not allege any interest in the garage and was not present at the time of the search of the garage and the seizure of the coffee within it. Nor did he claim any proprietary or possessory interest in the coffee.

Furthermore, the indictment does not allege that the coffee in the garage was criminally received by Tortorello. The coffee seized in the garage amounted to only 50 boxes, while the indictment charges the defendants with receiving 250 boxes, the very amount found in the *basement*. Indeed, the Government specifically concedes in its brief that "the indictment does not charge . . . the 50 cases found in the garage." Since the Government has not charged Tortorello with possession of the coffee found in the garage at the time of the illegal search, it has not involved itself

in any seeming self-contradiction.[3] In the case of Tortorello, with respect to the garage seizure, we think, therefore, that our case meets all of the criteria set forth in *Brown.*[4]

 We follow the "established principle" laid down in *Alderman v. United States*, 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176, 185 (1969), that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Accordingly, we find that Tortorello did not have standing to challenge the search of the garage.[5]

### III

 The search of the basement presents a different problem. It is true that Tortorello lacked a possessory interest in the basement, just as he lacked an interest in the garage. However, Tortorello accompanied the agents when they conducted the search of the basement. The Government also requested Tortorello to consent to the basement search. It would be anomalous for us to permit the Government to support the legality of its search on the basis of consent while denying that the person upon whose consent the legitimacy of the search depends has standing to object to it. We find, therefore, that Tortorello did have standing to challenge the legality of the basement search.

 We conclude, however, that Tortorello voluntarily consented to the search of the basement, as Judge MacMahon found after the hearing.[6] Whether he was in fact authorized to give consent for the search of the basement or not, he is bound by his consent. He signed a written authorization which gave the FBI agents the right to conduct the search. Though he now contends that he was coerced to agree, coercion is not established solely by the circumstance that the statement was signed while Tortorello was sitting in a car with three FBI agents. He was not under detention through an illegal arrest. Compare *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). As the Supreme Court recently noted, "the fact of custody alone has never been enough in itself to demonstrate a coerced . . . consent to search." *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609 (1976). See also *United States v. Fields*, 458 F.2d 1194, 1198 (3 Cir. 1972), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2755, 37 L.Ed.2d 154 (1973). Tortorello did not testify that the agents pressured him into signing the consent form. He testified that the agents simply told him that they had found coffee in the garage and that they could get a warrant to search the basement if he did not consent. Consent is a question of fact to be determined from all the circumstanc-

---

**3.** We do not find controlling, however, the fact that the indictment charged the defendant with receiving, concealing and storing the stolen coffee "[o]n or about April 23, 1973," while the search took place on April 30th, seven days later. The dates set forth in the indictment seem to be approximations, since there appears to be no evidence which directly shows that defendants possessed the coffee on April 23rd.

**4.** We therefore have no reason to determine whether the "automatic standing" rule of *Jones* still has any application, in light of *Simmons* and *Brown*.

**5.** Appellant also argues, relying on *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), that he should have standing to challenge the search of the garage by reason of the fact that his co-defendant, Hoffman, concededly does have standing. This argument is

without merit, since the Supreme Court has rejected a reading of *McDonald* which would automatically extend standing to a co-defendant. *Alderman v. United States, supra*, 394 U.S. at 173 n. 7, 89 S.Ct. at 966, 22 L.Ed.2d at 186.

**6.** Appellee conceded in his brief in this court that "while the opinion of Judge MacMahon on November 14, 1975 may not be reviewed for the purpose of considering the reargument, it is nevertheless instructive as to the Findings of Facts and Conclusions of Law that the Judge made with respect to his original decision of August 29, 1975." In the posture of the case, we assume that upon a remand the Judge would affirm the findings he made in the November 14 opinion.

es. See *United States v. Miley*, 513 F.2d 1191, 1201–02 (2 Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975). "In this case, there is no evidence of any inherently coercive tactics—either from the nature of the police questioning or the environment in which it took place. Indeed, since consent searches will normally occur on a person's own familiar territory, the specter of incommunicado police interrogation in some remote station house is simply inapposite." *Schneckloth v. Bustamonte*, 412 U.S. 218, 247, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854, 874 (1973).

Nor was Tortorello's consent tainted by the circumstance that, before he consented, he was informed by the FBI agents that they had seen the coffee in the garage. The warrantless search of the garage was an unreasonable search, as we have seen, and the procurement of a "voluntary" consent to search based upon a prior illegal search may taint the consent. See, *e. g.*, *United States v. Hearn*, 496 F.2d 236, 241–44 (6 Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974); *Holloway v. Wolff*, 482 F.2d 110, 115 (8 Cir. 1973). This principle might have been applicable here, as well, if Tortorello's own right of privacy had been invaded in the garage search. Since we have determined, however, that Tortorello had no standing to contest the legality of the garage search, the information obtained from that search was not illegally obtained *as far as Tortorello is concerned.* In *Wong Sun v. United States*, 371 U.S. 471, 491–92, 83 S.Ct. 407, 419, 9 L.Ed.2d 441, 458 (1963), the Court held that narcotics illegally obtained from Yee could nevertheless be used as evidence against Wong Sun, since "[t]he seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." It follows that the unlawful search of the garage did not invalidate Tortorello's consent to the search of the basement.

The order of the District Court filed on September 3, 1975, is reversed insofar as it suppresses, with respect to appellant Tortorello, evidence obtained from the searches at 2258 Hermany Avenue on April 30, 1973, and statements made by Tortorello in connection with these searches.