**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Allen KISSNER, Defendant and Appellant.**

**No. 11928.**

Supreme Court of South Dakota.

Argued Jan. 12, 1977.

Decided April 15, 1977.

Peter H. Lieberman, Asst. Atty. Gen., for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

John F. Cogley, of Morgan, Fuller, Theeler & Cogley, Mitchell, for defendant and appellant.

DUNN, Chief Justice (on reassignment).

Defendant appeals his conviction in the Ninth (now Third) Judicial Circuit Court of three counts of unlawful possession of controlled substances. He was found guilty following a trial to the court on March 10, 1976. We affirm.

On January 20, 1975, the Spink County sheriff presented twelve complaints to the local magistrate. All of these complaints concerned individuals who allegedly distributed controlled substances to Richard Carlson, a paid drug informant, sometime between September and November 1974. One of the complaints charged defendant with distribution of tetrahydrocannabinol. The magistrate inquired about the background of the complaints. The sheriff stated that Carlson had been hired by the county to purchase drugs, that he had worked similarly with other agencies, that he had at one time been connected with drugs, and that he had been "doing the job that he was hired to do" in Spink County. Arrest warrants were issued.

At about 10:30 a. m. on January 21, 1975, the sheriff, a Redfield police officer, and Jerry Lindberg, a South Dakota D.C.I. agent, went to defendant's trailer. Defendant, clad only in pants, answered the door. The sheriff grabbed his arm and placed him under arrest. The officers then entered the trailer while defendant dressed. When asked where his coat was, defendant indicated one lying on a chair. Lindberg helped defendant put on the coat. Another occupant of the trailer for whom a warrant had been issued was also arrested. Defendant was taken to the sheriff's office where a strip inventory search was conducted.

While inside the trailer, Lindberg noticed a scale, a razor blade, and what he thought were small white paper packets in plain view on a table near the door. He went to the state's attorney's office to draft an affidavit for a search warrant. The results of the strip search at the sheriff's office and the discovery of controlled substances in defendant's coat were relayed to Lindberg by phone and added to the affidavit. A warrant to search defendant's trailer was issued.

After obtaining the search warrant and before executing it, Lindberg returned to the sheriff's office and spoke with defendant in the "irrigation" room. Lindberg requested defendant's permission to search his trailer and van. He did not mention that a search warrant had been obtained. Defendant asked whether they would obtain a warrant if he did not consent. Lindberg responded that he would present the information he had, and that a judge would have to determine whether a warrant should be issued. Defendant granted the request to search the trailer and van, appearing primarily concerned that none of his property was damaged during the search. In the subsequent search, amphetamines and marijuana were found in the van and amphetamines, hashish, marijuana and cocaine were found in the trailer.

Defendant was bound over following preliminary hearings on the distribution charge

and possession charges. He moved to quash the arrest warrant and the search warrant and to suppress the evidence seized. Hearings were held June 11, 1975, and July 24, 1975. On December 8, 1975, the court in a Memorandum Decision ruled that the arrest warrant was not supported by probable cause. A further hearing was held January 9, 1976, to determine whether the officers had probable cause for a warrantless arrest. The court held they did.

On March 10, 1976, before trial on the possession charges, the state's attorney moved to dismiss the distribution charge. Carlson and another person present at the time of the alleged sale, Dan Herschman, were not competent to testify, both having been convicted of perjury in unrelated cases. SDCL 19–1–4.

## WARRANTLESS ARREST

Defendant claims his arrest violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and under South Dakota Constitution, Article VI, § 11. Absent exigent circumstances, defendant contends, no warrantless arrest of a person within his residence should be permitted.

The recent United States Supreme Court case of *United States v. Santana,* 1976, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300, raises some question in our minds as to whether a person voluntarily answering his door remains in the privacy of his dwelling or has so exposed himself as to be in a "public" place. However, the Supreme Court did not specifically deal with this question, and we need not determine it here because we find the officers had no probable cause for a warrantless arrest of defendant.

Determining whether probable cause exists from the report of an informant requires utilizing the two-prong test set out in *Aguilar v. Texas,* 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and modified in *Spinelli v. United States,* 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and *United States v. Harris,* 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *see generally* : Comment, An Informant's Tip as the Basis for

Probable Cause: Modified Aguilar Standards, 20 S.D.L.Rev. 363.

Carlson reported the following information. Late in the evening of November 1, 1974, he was driving around in Redfield with three other young men in his car. They saw defendant driving his van. One of Carlson's passengers, Herschman, indicated that defendant probably had some drugs for sale. Carlson pulled alongside defendant, and Herschman asked defendant whether he had any marijuana to sell. Defendant replied that he had two bags. Carlson stated he would buy them. About fifteen minutes later, the two vehicles met at the Pavillion near Redfield where Carlson purchased one bag from defendant for twenty dollars. Later that night, Carlson gave the bag and the above report to a Spink County deputy sheriff.

The United States Supreme Court in *Aguilar v. Texas,* supra, set out the facts or circumstances necessary to establish probable cause. Paraphrasing the Court's holding to correspond with the facts of this case: we must determine whether probable cause existed based upon (1) the officers' knowledge of some of the underlying circumstances from which the informant concluded that defendant has committed a crime and (2) some of the underlying circumstances from which the officers concluded that the informant was credible or his information reliable. Here, clearly the first prong has been met. Carlson reported that he based his conclusion upon personal observation, in fact, personal participation. This is certainly an adequate basis of knowledge.

The second prong is not as clear. The state must show informant credibility or information reliability. Informant credibility can be established in at least two different ways. One method is the private citizen presumption which we recognized in *State v. Gerber,* 1976, S.D., 241 N.W.2d 720, wherein a person without any motive to falsify reports criminal activity. *See also* : *State v. Chatmon,* 1973, 9 Wash.App. 741, 515 P.2d 530. This method is, of course, not applicable here because Carlson was a paid

informant. *State v. Gerber*, supra, 241 N.W.2d at 723.

■ An alternative method of establishing informant credibility is through the "track record" of the informant. However, here the officers dealt with an informant who had been conducting a series of drug buys which did not lead to any arrests until January 21, 1975, when Carlson surfaced. After each alleged buy, Carlson met with either the sheriff or a deputy, delivered the drugs, and stated where, when and from whom he obtained them. Lindberg did tell the sheriff that Carlson had worked elsewhere and had made five or six "good buys" for the Huron police department. If, in fact, these buys had led to arrests or arrests and convictions, this should have been presented at the suppression hearings. In *Gerber,* we expressed our skepticism about the effective use of paid informants. Without a "track record" of arrests and convictions, we cannot hold that Carlson was a credible informant.

■ The second prong of Aguilar can be satisfied by showing information reliability. An informant's report can be shown to be reliable even though he is not proven credible where independent police verification of suspicious conduct by an accused, *Spinelli v. United States*, supra; *Sabbath v. United States,* 1967, 9 Cir., 380 F.2d 108, reversed on other grounds, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828; *United States v. Romero,* 1972, D.C.N.Y., 343 F.Supp. 988; *United States v. King,* 1969, D.C.Miss., 305 F.Supp. 630; or an accused's reputation supported by other information, *United States v. Harris,* supra; *United States v. Regan,* 1975, 8 Cir., 525 F.2d 1151; corroborates the report. In the case at bar, the officers had more than two months to corroborate Carlson's report. The only corroboration made prior to defendant's arrest was the license number of a car which was going to be parked at defendant's trailer. This is the type of information that the Supreme Court in *Spinelli* termed "innocent-seeming activity." 393 U.S. at 414, 89 S.Ct. at 588, 21 L.Ed.2d at 642. Any corroboration after defendant's arrest cannot

be used retroactively to justify that arrest. *Costello v. United States,* 1963, 9 Cir., 324 F.2d 260.

The sheriff testified that he did not seek to corroborate Carlson's reports because he feared exposing him. While we acknowledge the sheriff's dilemma, we cannot uphold uncorroborated tips from an untested paid informant, particularly where a substantial period of time (more than forty-five days) elapsed after Carlson left the Redfield area before defendant's arrest. We overturn the warrantless arrest of defendant and the inventory search of him at the sheriff's office. Because of this holding, we need not deal with defendant's other attack upon the validity of his arrest.

### CONSENT SEARCH

■ The question then becomes whether defendant's consent to search his trailer and van was voluntary or the fruit of the illegal arrest. Where a defendant gives consent to search while in custody following an illegal arrest, the state must establish voluntariness by clear and convincing evidence. *United States v. Bazinet,* 1972, 8 Cir., 462 F.2d 982; *Phelper v. Decker,* 1968, 5 Cir., 401 F.2d 232. In determining voluntariness, though, there need be no knowing and intelligent waiver or advice of a right to refuse consent. *Schneckloth v. Bustamonte,* 1973, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. Custody alone is also insufficient to prohibit voluntariness. *United States v. Watson,* 1976, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598; *United States v. Green,* 1975, 8 Cir., 525 F.2d 386. We must look at the totality of the circumstances, endeavoring to determine the "nature of a person's subjective understanding." *Schneckloth v. Bustamonte,* supra, 412 U.S. at 230, 93 S.Ct. at 2049, 36 L.Ed.2d at 860; *United States v. Green,* supra; *United States v. Bazinet,* supra; *Weed v. United States,* 1965, 10 Cir., 340 F.2d 827.

■ Lindberg met with defendant in the irrigation room sometime between 12:30 and 1 p. m. This was approximately two hours after his arrest. Defendant was

warned of his *Miranda* rights. He had not been subjected to any prolonged interrogation. Lindberg told defendant he suspected there were drugs in defendant's trailer and wanted his permission to search it. Next followed the colloquy mentioned above concerning the possibility of a warrant being issued if no consent were given. Lindberg testified as follows concerning that conversation:

> "Well he wondered if he didn't give me permission if I would be able to get a search warrant and I told him that I would present my information to the Judge and if the Judge felt it was necessary to issue a search warrant he would. I couldn't guarantee if he would or wouldn't. I asked for his permission again and he granted it and also give me permission to search the truck or van."

We find this particularly revealing. It indicates defendant knew he had a right to refuse consent. In addition, defendant was a high school graduate; there is no hint in the record nor any claim of any verbal or physical abuse. No promises or threats were made. We hold it is clear that defendant was not submitting to authority by his consent. He merely decided to consent rather than speculate as to whether a warrant would be issued. Cf. *Bumper v. North Carolina,* 1968, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; *United States v. Tortorello,* 1976, 2 Cir., 533 F.2d 809. Defendant not only granted consent to search, he also told Lindberg where the drugs were secreted. In addition, defendant did not elect to testify concerning the facts surrounding his consent at any of the suppression hearings. See *Simmons v. United States,* 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

We do not find it persuasive that defendant may have been influenced by the prior discovery of drugs in his coat pocket. The officers were not engaged in the type of flagrant police misconduct which is sought to be deterred by the fruit of the poisonous tree doctrine. *Brown v. Illinois,* 1975, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *State v. Pierson,* 1976, S.D., 248 N.W.2d 48 (Dunn, C. J., concurring opinion). There is

no evidence that the officers thought the earlier discovered drugs would be inadmissible and were seeking to rectify a mistake through defendant's consent. The controlled substances discovered during the search of defendant's trailer and van were properly admitted.

Affirmed.

ZASTROW and PORTER, JJ., and MOSES, Circuit Judge, concur.

WOLLMAN, J., concurs specially.

MOSES, Circuit Judge, sitting for MORGAN, J., disqualified.

WOLLMAN, Justice (concurring specially).

Although I agree with the holding of the majority opinion that defendant voluntarily consented to the search of his residence and vehicle, and therefore join in the affirmance of the conviction, I would hold that the officers had probable cause to arrest defendant. Sheriff Newman testified that he had hired Carlson on the recommendation of Jerry Lindberg, an agent of the state Division of Criminal Investigation, who had told him that Carlson had done a reliable job in the Belle Fourche, South Dakota, area and that he was also working in the Huron area at the time, and on the recommendation of an agent in the Belle Fourche area. Sheriff Newman also testified that Carlson had made drug purchases in eleven other cases prior to the purchase from defendant and that he, Sheriff Newman, had found Carlson's information to be very reliable. This to me is sufficient information to establish Carlson's credibility. If we are going to require as a test of credibility a prior conviction based upon a drug informant's undercover work, we may curtail too severely the number of first-time informants available to law enforcement officers. I do not read *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, or *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, as establishing as a test of credibility the requirement that the informant must have given the arresting officer information in prior cases that had resulted in arrests and convictions.

The majority opinion holds that the state must establish the voluntariness of defendant's consent to search by clear and convincing evidence. I do not recall that we have ever imposed this strict a standard of proof in any of our earlier search and seizure cases. In the ordinary consent to search case the United States Supreme Court has required no greater burden than proof by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. I see nothing in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, that establishes a higher standard of proof where consent is obtained following an arrest made without probable cause, and I would not adopt the clear and convincing evidence test in the absence of any compelling reason to do so.